9 Cal.App.4th 61 (1992)
11 Cal. Rptr.2d 631
In re PATRICIA L., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
FRANCISCA A., Defendant and Appellant.
Docket No. D016334.
Court of Appeals of California, Fourth District, Division One.
August 13, 1992.
*64 COUNSEL
Janice R. Mazur, under appointment by the Court of Appeal, for Defendant and Appellant.
Lloyd M. Harmon, Jr., County Counsel, Susan Strom, Chief Deputy County Counsel, Gary C. Seiser and John E. Philips, Deputy County Counsel, for Plaintiff and Respondent.
Denise Moreno Ducheny, under appointment by the Court of Appeal, for Minor.
OPINION
WIENER, Acting P.J.
Francisca A., maternal grandmother of Patricia L., appeals a February 27, 1992, order terminating her "de facto parent" status. We conclude insufficient evidence supported the court's ruling and reverse the order.

I.
Because this appeal concerns only Francisca's "de facto parent" status, we do not set out a detailed discussion of the facts relating to Patricia. We focus on the facts relevant to Francisca's relationship with Patricia and Francisca's participation in the dependency process.
On May 7, 1987, shortly after Patricia's birth, the court declared Patricia a dependent of the court based on a finding the child was born with a *65 positive toxicology screen for cocaine and opiates. The court placed Patricia with Francisca, where she lived for the next three years. During this time, the court granted Francisca de facto parent status and appointed counsel to represent her.
In July 1990 the court determined Patricia's mother had made significant progress and returned the child to her. About 10 months later, the department filed a supplemental petition, seeking to remove Patricia from her mother's custody. On May 15, 1991, a disposition hearing was held on the supplemental petition. At that hearing the court granted Francisca's counsel's request to be relieved because she had "not talked to [Francisca], seen her, or [knew of] her whereabouts since July 1990...." At the conclusion of the hearing, the court removed Patricia from her mother's custody and ordered Patricia to live with her maternal aunt.
In December 1991 the maternal aunt requested that Patricia be removed from her custody because she did not want to continue to be subjected to verbal abuse by the minor's mother. Pursuant to that request, the department noticed a Welfare and Institutions Code section 387 hearing. Francisca attended that hearing and requested her de facto parent status be reasserted and an attorney reappointed. The court appointed counsel for Francisca, authorized visitation between Patricia and Francisca, but delayed considering whether Francisca's de facto parent status should be continued. At the conclusion of the hearing, the court ordered Patricia to be placed in foster care.
On February 27, 1991, the court denied Francisca's request for continued de facto parent status and retroactively terminated the status to July 1990, when custody was restored to the mother. The court reasoned that when it returned Patricia to her mother's custody "the de facto parent's status [was] necessarily altered by operation of law." The court additionally said its conclusion was "bolstered" by the fact that Francisca failed to assert her de facto parent status at the "subsequent [section] 387 [hearing] removing custody from the mother to the maternal aunt." In so ruling, the court did not conduct an evidentiary hearing, but rather relied on counsels' oral and written arguments. The court reached its conclusion despite acknowledging there had been no "formal court order dissolving the previous status."
Francisca says the court's February 27th rulings were error. The department concedes the reasons given by the court for its denial of Francisca's continued status were not legally correct. (1) (See fn. 1.) The department *66 nonetheless maintains we should uphold the order because sufficient evidence supported the ruling.[1]

II.
A "de facto" parent is "a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period." (Cal. Rules of Court, rule 1401(a)(4); see In re B.G. (1974) 11 Cal.3d 679, 692 [114 Cal. Rptr. 444, 523 P.2d 244].) "The de facto parent may: [¶] (1) Be present at the hearing; [¶] (2) Be represented by retained counsel or, at the discretion of the court, by appointed counsel; [¶] (3) Present evidence." (Cal. Rules of Court, rule 1412(e).)
(2) From these rules we discern the importance of de facto parent status: the status provides a nonbiological parent who has achieved a close and continuing relationship with a child the right to appear as a party, to be represented by counsel, and present evidence at dispositional hearings. Absent such status, very important persons in the minor's life would have no vehicle for "assert[ing] and protect[ing] their own interest in the companionship, care, custody and management of the child" (In re B.G., supra, 11 Cal.3d 679, 693) and the court would be deprived of critical information relating to the child's best interests. (See Katzoff v. Superior Court (1976) 54 Cal. App.3d 1079, 1084 [127 Cal. Rptr. 178]; In re Joshuia S. (1988) 205 Cal. App.3d 119, 125 [252 Cal. Rptr. 106].)
(3) Whether a person falls within the definition of a "de facto parent" depends strongly on the particular individual seeking such status and the unique circumstances of the case. However, the courts have identified several factors relevant to the decision.[2] Those considerations include whether (1) the child is "psychologically bonded" to the adult; (2) the adult *67 has assumed the role of a parent on a day-to day basis for a substantial period of time; (3) the adult possesses information about the child unique from the other participants in the process; (4) the adult has regularly attended juvenile court hearings; and (5) a future proceeding may result in an order permanently foreclosing any future contact with the adult. (See In re Rachael C. (1991) 235 Cal. App.3d 1445, 1452-1453 [1 Cal. Rptr.2d 473]; Christina K. v. Superior Court (1986) 184 Cal. App.3d 1463, 1466-1469 [229 Cal. Rptr. 564]; Katzoff v Superior Court, supra, 54 Cal. App.3d 1079, 1083-1085; see also Charles S. v. Superior Court (1985) 168 Cal. App.3d 151 [214 Cal. Rptr. 47].)[3] If some or all of these factors apply, it is immaterial whether the adult was the "child's current or immediately succeeding custodian." (In re Rachael C., supra, 235 Cal. App.3d at p. 1453; see Cal. Rules of Court, rule 1401(a)(4).) Because a court can only benefit from having all relevant information, a court should liberally grant de facto parent status. If the information presented by the de facto parent is not helpful, the court need not give it much weight in the decisionmaking process. (In re Rachael C., supra, 235 Cal. App.3d at p. 1452.)
(4) The procedural rules governing de facto parent status are well settled. A person seeking de facto parent status must file a written application and establish by a preponderance of the evidence that he or she falls within the definition of a de facto parent. (Cal. Rules of Court, rule 1412(e); In re Joshuia S., supra, 205 Cal. App.3d 119, 125; see San Diego County Superior Court Rules, rule 1.3(b).) Once the court grants the de facto status, it continues even though the biological parent becomes involved in the proceedings or regains custody of his or her child. (See In re Robin N. (1992) 7 Cal. App.4th 1140 [9 Cal. Rptr.2d 512].) To terminate de facto parent status, the department has the burden of establishing a change of circumstances which no longer support the status, such as when a psychological bond no longer exists between the adult and the child. In this regard, we emphasize that de facto parent status does not terminate by operation of law or by any other automatic mechanism except where the dependency itself is terminated. During the dependency if the department believes such status is no longer warranted, it must file a noticed motion to that effect allowing the court to hold a hearing. Where there are disputed factual issues, the court should permit the parties to present evidence. (See Katzoff, supra, 54 Cal. App.3d at p. 1085.)

*68 III.
(5) Applying the foregoing principles here, we conclude there was insufficient basis for the court to terminate Francisca's de facto parent status.
The department failed to produce any evidence showing a change of circumstances justifying the termination of de facto parent status. While it was undisputed that Patricia had not lived with Francisca for about two years, there was no evidence showing the psychological bond between Francisca and Patricia had ended or that Francisca was no longer deeply concerned about her granddaughter's welfare. As the court acknowledged, there was a "critical factual discrepancy" of whether the grandmother had contact with the minor since approximately June of 1990 and more importantly the extent or quality of that contact. Resolution of that "factual discrepancy" was essential before the court could decide whether de facto status should have continued.[4] This is particularly true since Francisca had assumed the role of parent during a critical time  for the first three years of her granddaughter's life. Because of this and because of Francisca's relationship with her daughters (including the maternal aunt), Francisca undoubtedly possessed unique information that would be helpful to the court in reaching disposition decisions. As minor's counsel points out "Patricia's mother `has a history of maintaining for 9-10 months and then reverting back to her old ways.' Under these circumstances it is clearly in the child's best interests to have a consistent relative, who has in the past served as a primary caretaker continue holding de facto status to appear and present evidence with respect to the child's continuing needs and placement."

IV.
(6) The department argues alternatively that even if there were error, Francisca was not harmed because she was allowed to participate in the proceedings. While it is true that relatives of a minor can participate in the dependency process without de facto status, a relative does not necessarily have the full menu of rights as does a de facto parent. For example, a relative does not have a right to counsel, to participate as a party, or to present evidence. (See Cal. Rules of Court, rule 1412(f).) Moreover, there is no affirmative duty on the court to give notice of proceedings to relatives. We therefore hold the court's termination of Francisca's de facto parent status constituted prejudicial error.

*69 DISPOSITION
Order reversed.
Work, J., and Froehlich, J., concurred.
NOTES
[1] The department also contends the appeal is moot, directing us to a transcript of a March 31, 1992, hearing. On March 5, 1992, Francisca filed a notice of appeal from the court's February 27th hearing. Subsequently, Francisca filed a new application for de facto parent status, to be heard at the March 31, 1992, hearing. At the March 31 hearing, the court returned Patricia to her mother's custody. Because Francisca agreed with that disposition, she withdrew her new application for de facto parent status.

Contrary to the department's assertions, we do not think such withdrawal rendered this appeal moot. First, we are required to review the record as it exists at the time the appeal is filed. More importantly, the record indicates Francisca withdrew her new application and did not abandon her rights to appeal from the court's February 27th ruling.
[2] As is reflected in the burgeoning number of cases discussing the definition of de facto parent status, courts appear to be having more difficulty in applying the definition than was expected by our Supreme Court in 1974, which said it anticipated "juvenile courts will experience little difficulty in determining whether a person is a de facto parent...." (In re B.G., supra, 11 Cal.3d at p. 692, fn. 18.)
[3] Contrary to the department's assertions, Rachael C., Katzoff, and Charles S. correctly apply the principles of "de facto parent status" and we see nothing in those decisions which conflict with In re B.G., supra, 11 Cal.3d 679.
[4] To the department's credit, its memorandum of points and authorities regarding de facto parent status recognized it was "not clear how much contact the grandmother has maintained with Patricia since June 1990" and suggested "this would be an appropriate inquiry for an evidentiary hearing." (Italics added.) Unfortunately, at the hearing the court and the parties became sidetracked by the notion that de facto status terminates by operation of law, and no evidentiary hearing was conducted.