[No. E021747. Fourth Dist., Div. Two. Oct. 8, 1998.]

In re MICHAEL R. et al., Persons Coming Under the Juvenile Court Law.
SAN BERNARDINO COUNTY DEPARTMENT OF PUBLIC SOCIAL
SERVICES, Plaintiff and Respondent, v.
BEVERLY R., Defendant and Appellant.

**COUNSEL**

Melissa A. Chaitin, under appointment by the Court of Appeal, for Defendant and Appellant.

Alan K. Marks, County Counsel, Regina A. Coleman and Michael A. Markel, Deputy County Counsel, for Plaintiff and Respondent.

William B. Walls, under appointment by the Court of Appeal, for Minors.

**OPINION**

**WARD, J.**—Beverly R. (grandmother) is the paternal grandmother of Michael R. (minor), who was adjudicated a dependent child of the court. The sole issue on appeal is whether the juvenile court erred in denying the grandmother's request for de facto parent status. We conclude the court did not err, and we affirm.

## FACTS AND PROCEDURAL HISTORY

Because the issue on appeal is limited, no extensive description of the dependency proceedings is needed.

The minor and his younger siblings were subjects of dependency proceedings, beginning in September of 1995, when the minor was five years old, because the minor's father physically abused him. Subsequent petitions were filed when the father still had problems with anger management, and continued to discipline the minor inappropriately. The subsequent petitions also included the younger siblings, because they were at risk for similar abuse.

The department of public social services (DPSS) did not recommend placement with the grandmother. The social worker was concerned that the grandmother was in denial about her son's (the father's) physically abusive conduct. The social worker was also concerned that, although the grandmother's home was otherwise appropriate, the grandmother might not honor the court's restrictions on the father's visitation. On September 26, 1996, the court ordered the children placed with a paternal aunt (the father's sister).

After about seven months in the aunt's home, the minor reported that the father still hit him at times when he would visit the minor in the aunt's home. The minor went to school bearing scratches and bruises which caused school authorities to notify DPSS. The aunt later asked that the minors be removed from her custody, as she already had her own children to care for, and it was difficult to deal with the father's demanding behavior.

In April of 1997, the minor and his siblings were placed with the grandmother, with the agreement that the father was not to live in the grandmother's home or to visit the minors there. All visitation was to be supervised and take place at DPSS offices.

After the children had been placed with the grandmother for about four months, the social worker made an unannounced visit to the grandmother's residence on August 7, 1997. The minor told the social worker that the father had stayed overnight and slept in the same bed with the minor. A neighbor in the apartment complex confirmed that the father often spent the night in the grandmother's apartment; the neighbor thought the father lived there.

The social worker returned to the grandmother's residence later the same day to take the children into protective custody, as the grandmother had violated her agreement not to allow the father free access to the children. The social worker found no one at home; later, the grandmother telephoned

DPSS to state she would not tell DPSS where she or the children were, and that she would "do everything she can to keep [DPSS] from finding the children."

Nearly two months later, on September 30, 1997, the minor's school notified DPSS that a request for transfer of his school records had been made by a school in Texas. A few days later, on October 3, 1997, an anonymous caller told DPSS the address where the grandmother and the children were living in Texas. The juvenile court issued warrants to take the children into protective custody; social workers went to Texas and, with the cooperation of Texas authorities, brought the children back to California. The children were placed in confidential foster care.

DPSS filed supplemental petitions to remove the children from the grandmother's care, because she had flouted court orders concerning the father's contact with the children, and because she had abducted the children and fled to Texas to avoid the juvenile court's authority.

The grandmother filed a petition for de facto parent status, in order to contest the supplemental petitions and removal of the children from her custody.

The court denied the grandmother's petition for de facto parent status. The social worker's jurisdictional and dispositional report on the subsequent petitions recited that the mother had done little or nothing to reunify with the minor, the father had taken parenting and anger management classes, but had not learned to change any of his abusive behaviors, and the grandmother had not protected the children from their abusive father. Instead, the grandmother "covered up" for her son's conduct and allowed him free access to the children in contravention of court orders. DPSS recommended proceeding on the subsequent petitions to terminate the parents' rights.

The grandmother appealed from the order denying her de facto parent status, and alleged the denial prevented her from defending herself on the subsequent petitions.

DISCUSSION

I. *Standard of Review*

A. *Standards Used by the Trial Court*

■ Under California Rules of Court, rule 1401(a)(4), a de facto parent is "a person who has been found by the court to have assumed, on a day-to-day

basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period."

The finding of de facto parent status is dependent upon the facts of each individual case. (*In re Ashley P.* (1998) 62 Cal.App.4th 23, 27 [72 Cal.Rptr.2d 383].) The juvenile court in making its factual findings employs the preponderance of the evidence standard. (*In re Joshuia S.* (1988) 205 Cal.App.3d 119, 125 [252 Cal.Rptr. 106].)

The juvenile court may look to factors such as: Is the child psychologically bonded to the adult? Has the adult assumed the role of a parent on a day-to-day basis for a substantial period of time? Does the adult have unique knowledge about the child? Has the adult regularly attended juvenile court hearings? Will the juvenile proceedings result in an order permanently foreclosing future contact between the child and the adult? (*In re Patricia L.* (1992) 9 Cal.App.4th 61, 66-67 [11 Cal.Rptr.2d 631].)

The juvenile court normally "can only benefit" from looking to important sources, in addition to the natural parents, of information about the minor. Thus, de facto parent status ordinarily should be liberally granted. (*In re Ashley P., supra,* 62 Cal.App.4th 23, 27; *In re Hirenia C.* (1993) 18 Cal.App.4th 504, 514 [22 Cal.Rptr.2d 443].) The juvenile court remains free to disregard the de facto parent's input if it turns out that the person granted that status did not have a significant relationship with the child, or if the information is not helpful. (*In re Patricia L., supra,* 9 Cal.App.4th 61, 67; *In re Rachael C.* (1991) 235 Cal.App.3d 1445, 1452 [1 Cal.Rptr.2d 473], overruled on other grounds in *In re Kieshia E.* (1993) 6 Cal.4th 68, 80 [23 Cal.Rptr.2d 775, 859 P.2d 1290].)

The juvenile court should not deny a de facto parent application on grounds that allowing the de facto parent's participation will interfere with the proceedings or will interfere with the goal of providing a permanent, stable home for the child. (*In re Vincent C.* (1997) 53 Cal.App.4th 1347, 1358 [62 Cal.Rptr.2d 224]; *In re Rachael C., supra,* 235 Cal.App.3d 1445, 1452.) The court may, however, consider whether the person applying for de facto parent status has committed a "substantial harm" to the child. (*In re Kieshia E., supra,* 6 Cal.4th 68, 78; see also *In re Vincent C., supra,* 53 Cal.App.4th 1347, 1358.)

The person applying for de facto parent status bears the burden of proof on the issue. (*In re Hirenia C., supra,* 18 Cal.App.4th 504, 514; *In re Joshuia S., supra,* 205 Cal.App.3d 119, 125.)

## B. *Standard of Appellate Review*

■ The courts reviewing orders denying a motion for de facto parent status have not, by and large, clearly articulated a standard of appellate review. One court has treated the denial of a petition for de facto parent status as akin to a demurrer sustained without leave to amend, and has therefore taken the view that, assuming all the facts of the petition are true, the reviewing court independently determines whether such facts are sufficient to support a finding of standing under any legal theory. (*In re Hirenia C., supra*, 18 Cal.App.4th 504, 512.)

While not clearly articulating any particular standard, other courts have reviewed the evidence to determine whether it supported the trial court's denial of de facto parent status. (See, e.g., *In re Ashley P., supra*, 62 Cal.App.4th 23; *In re Vincent C., supra*, 53 Cal.App.4th 1347.)

We decline to adopt the demurrer-like standard of *In re Hirenia C., supra*, 18 Cal.App.4th 504, 512. The demurrer-like standard accepts the truth of all facts alleged by the petitioning party. In our view, this standard does not take sufficient account of the lower court's function in ruling on the petition. Because the inquiry is by nature dependent upon factual determinations, including resolution of disputed facts and credibility, we believe appellate review should be by a deferential abuse-of-discretion standard. In most cases, the lower court does not abuse its discretion if substantial evidence supports its determination to grant or deny de facto parent status. (See *In re Krystle D.* (1994) 30 Cal.App.4th 1778, 1809 [37 Cal.Rptr.2d 132] ["substantial evidence supported the trial court's conclusion that [the former stepfather] was not a de facto parent"].)

## II. *The Court Did Not Abuse Its Discretion in Denying De Facto Parent Status to the Grandmother*

■ We conclude that substantial evidence supports the juvenile court's denial of the grandmother's petition for de facto parent status.

The grandmother did show significant involvement in the children's lives, seeing them on almost a daily basis since they were born. She had also been a day-to-day caretaker when the minor and his siblings were placed in her home from April to August of 1997. She had been present at many of the court hearings. She was at risk of having her relationship with the children severed. On the face of things, the grandmother would ordinarily have met her burden of showing she was a de facto parent.

The court was entitled to take account also, however, of additional facts: i.e., the grandmother's conduct, in defiance of court orders, which also

placed the children at serious risk of harm. From the beginning of the proceedings, the grandmother had denied any physical abuse by the father, her son. DPSS was reluctant to place the children with her, fearing that the grandmother would not keep her son away from the children. DPSS allowed the children to be placed with the grandmother only upon her agreement that the father would not visit or stay at her house, and that she would permit only supervised visitation with the father, as arranged at the DPSS offices. The grandmother flouted this agreement. The minor reported that the father often stayed overnight in the grandmother's home. A neighbor confirmed this. When DPSS found out about the violation of court orders, the grandmother absconded with the children to Texas. She vowed to keep the children in hiding, and for some weeks no one knew where they were.

In *In re Kieshia E.*, *supra*, 6 Cal.4th 68, the California Supreme Court held that a person, otherwise qualifying as a de facto parent by reason of day-to-day care for a child, may be denied de facto parent status if the person has inflicted "substantial harm" on the child. In *Kieshia E.*, the court held that a nonparent who committed sexual or physical abuse on the minor has not acted as a parent, but in fact has abandoned that role. "By acting in a manner so fundamentally inconsistent with the parental role, the perpetrator forfeits any opportunity to attain the legal status of de facto parent and its attendant privilege of participation and advocacy." (*In re Kieshia E.*, *supra*, 6 Cal.4th 68, 78.)

The grandmother here did not herself molest or beat the children. Nonetheless, she refused and failed to recognize that her son did inflict physical abuse on the minor, and that the younger children were at risk for similar abuse. She did not protect the children from their father, but allowed him frequent unsupervised access to them. Although the father had gone through the motions of attending parenting and anger management programs, his conduct in these sessions was consistently hostile and uncooperative. Once, he became so abusive he was asked to leave the class. Another time, he bragged to the instructor about his ability to manipulate the system. In visitation sessions at the DPSS offices, the father was often inappropriate, encouraging the minor to misbehave, and himself expressing hostility to the social workers. The grandmother failed to recognize any danger to the children, despite clear signals.

Although the grandmother here did not personally strike the children or sexually molest them, she directly inflicted "substantial harm" on the minors: The ostensible purpose of abducting them and fleeing the state, one step ahead of the law, was to permit unrestricted access by the abusing parent. The grandmother thus deliberately placed the children in harm's way,

as much as if she herself were the abuser. Although the grandmother denied that her son had hurt the minor, that matter had already been adjudicated by the juvenile court. The grandmother was not permitted to retry that issue in her own mind and take the law into her own hands.

■ "[W]hen a nonparent caretaker commits '*a substantial harm*' to the child, a harm that is fundamentally at odds with the role of a parent, that person's protectible interest in dispositional decisions is extinguished, including whatever right he might otherwise have had to de facto parent status." (*In re Vincent C., supra,* 53 Cal.App.4th 1347, 1356-1357.) ■ Kidnapping the children, keeping them in hiding from the DPSS, and removing them without authority from the juvenile court's jurisdiction, purposely to allow free access by the abusing parent, is tantamount to aiding and encouraging the abuse. Such conduct is "fundamentally at odds with the role of a parent." The juvenile court was entitled to view the grandmother as having abandoned any interest she may have had in the court's according her the privilege of standing and participation in the proceedings.

The juvenile court did not abuse its discretion in denying the grandmother's petition for de facto parent status.

### DISPOSITION

The order denying de facto parent status is affirmed.

Ramirez, P. J., and McKinster, J., concurred.