185 Cal.App.4th 852 (2010)
In re D.R., a Person Coming Under the Juvenile Court Law.
ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Appellant,
v.
C.S. et al., Defendants and Respondents.
No. A124573.
Court of Appeals of California, First District, Division Four.
June 15, 2010.
*855 Richard E. Winnie, County Counsel, and Andrew J. Massey, Deputy County Counsel, for Plaintiff and Appellant.
Kerr & Wagstaffe, James M. Wagstaffe and Maria Radwick for Defendants and Respondents.

OPINION
REARDON, J. 
In this second of two appeals related to minor D.R., the juvenile court denied appellant Alameda County Social Services Agency's motion to terminate the de facto parent status of respondent C.S. It also granted the application of C.S.'s partnerrespondent K.F.for de facto parent status. The agency appeals both rulings, contending that the juvenile court either committed legal error or abused its discretion by denying the motion to terminate C.S.'s de facto parent status; and that it abused its *856 discretion by granting K.F.'s application for de facto parent status. We affirm the juvenile court's orders.

I. FACTS

D.R.'s Placements
The underlying facts of this juvenile dependency matter are set out in a related appeal.[1] We set out the facts pertinent to the issues raised in the matter now before us.
In June 2008, a supplemental petition was filed after then 12-year-old dependent child D.R. was removed from the home of his uncle, C.S., with whom he had lived since he was an infant. C.S. had been D.R.'s de facto parent since September 1997. The supplemental petition alleged that C.S. had inflicted corporal punishment on D.R., leaving marks on the minor's body. In November 2008, a juvenile court commissioner sitting as a temporary judge found the allegations of physical abuse to be true. Despite this fact, the commissioner sought the ultimate reunification of D.R. with C.S. and K.F.
At the close of the hearing on the supplemental petition, the agency made an oral motion to set aside C.S.'s de facto parent status based on the commissioner's physical abuse findings. The motion was denied without prejudice. In December 2008, the agency filed a written motion to terminate C.S.'s de facto parent status, citing the fact that D.R. was no longer living in his home. C.S. opposed the motion.
While the motion to terminate was pending, D.R.'s placement shifted again. He had displayed anxious, impulsive and aggressive behavior in his foster placement. A November 17, 2008 psychological assessment diagnosed D.R. with attention deficit hyperactivity disorder (ADHD) and child physical abuse. It also noted sexual preoccupations that were unusual for a child of his age, and multiple indications of historic trauma. A group home placement was recommended, to provide more structure and resources than a foster placement could. The psychologist hoped that this setting would help modulate D.R.'s aggressive externalizing behaviors. Neither the juvenile *857 court commissioner nor the agency had this report at the time of the November 21, 2008 findings on the supplemental petition.
On December 24, 2008, D.R. was removed from the foster home in which he had been placed in June 2008. He threatened to assault a new caregiver and was placed temporarily in a group home in Oakland. By the end of the year, D.R. had been moved to a therapeutic group home in Marin that met the requirements of the psychologist's recommendations. The juvenile court approved this placement, subject to later revision, in January 2009. In this placement, D.R. displayed aggressive and sexually provocative behavior.
D.R. had regular supervised visits and telephone calls with C.S. and K.F. C.S. sought additional contact with D.R., but refused agency entreaties to participate in family therapy with the minor. The agency sought to engage C.S. in his own therapeutic exploration of the factors leading to his physical abuse of D.R., which C.S. also resisted. The agency viewed therapy as a fundamental precondition to the safe return of D.R. to C.S.'s care. C.S. continued to deny any abuse of D.R., questioned the need for an out-of-home placement, and challenged the wisdom of the residential treatment placement.
At the group home, D.R. was diagnosed as suffering from ADHD, posttraumatic stress disorder, physical abuse and possible sexual abuse. He participated in numerous therapeutic programs there, including individual and group psychotherapy, anger management and communication skills development. He received a psychiatric consultation in order to identify effective medical treatment for his hyperactivity and aggression. A neuropsychological evaluation was conducted to identify factors that could guide D.R.'s treatment and medication. He expressed his desire to live with C.S. rather than at the group home. D.R. continued to display disruptive and aggressive behavior. A group home worker advised that if reunification with C.S. and K.F. was the ultimate goal, then more contact with them in family therapy was needed.
In March 2009, the agency recommended D.R.'s continued placement in the group home setting, over C.S.'s objections. C.S. complained that the agency did not want to provide him with services. The agency reported that it had been trying to facilitate services, but that C.S. refused to participate in therapy. At the conclusion of that hearing, the juvenile court found that the agency had complied with the case plan and had provided reasonable services. It adopted for D.R. a permanent plan of placement in the group home with a goal of a less restrictive foster placement.
*858 Several hearings on de facto parent status issues were held between January and April 2009. By March 2009, C.S.'s partnerrespondent K.F. sought a court order determining his own de facto parent status. The agency opposed this request.
On April 6, 2009, the agency argued that once the juvenile court found physical abuse had occurred, C.S. automatically forfeited his de facto parent status. Counsel for C.S.,[2] L.H. and D.R. all argued in favor of continued de facto parent status. D.R.'s counsel stated that the juvenile court commissioner knew that excessive physical punishment had occurred but that her primary concern was that the agency not relegate D.R. to an out-of-home placement until he reached age 18.
The agency argued that the law required an automatic termination of C.S.'s de facto parent status. The juvenile court took a more nuanced view of the case law. It found that a psychological bond existed between C.S. and D.R., and that terminating C.S.'s de facto parent status would not be in the minor's best interests. It denied the agency's motion to terminate C.S.'s de facto parent status and granted K.F.'s application for de facto parent status.[3] The agency appeals these two rulings.

II. STANDING
Preliminarily, C.S. and K.F. assert that the agency lacks standing to appeal the juvenile court orders. They argue that the agency is not an aggrieved party because their de facto parent status exists to benefit the juvenile court and does not adversely affect any legally cognizable interest held by the agency.
(1) Any party aggrieved in a civil action may appeal. (Code Civ. Proc., § 902; County of Alameda v. Carleson (1971) 5 Cal.3d 730, 736 [97 Cal.Rptr. 385, 488 P.2d 953]; see In re Paul W. (2007) 151 Cal.App.4th 37, 55 [60 Cal.Rptr.3d 329] [juvenile dependency case].) One has no standing to appeal *859 if one is not aggrieved. Without standing, there is no justiciable controversy for a court to entertain. To have standing, a person must have rights that may suffer actual or threatened injury. (In re P.L. (2005) 134 Cal.App.4th 1357, 1361 [37 Cal.Rptr.3d 6]; Clifford S. v. Superior Court (1995) 38 Cal.App.4th 747, 751 [45 Cal.Rptr.2d 333]; County of Alameda v. Carleson, supra, 5 Cal.3d at p. 737.) The party must have a legally cognizable interest that is injuriously affected by the juvenile court's decision. (In re Paul W., supra, 151 Cal.App.4th at p. 55; In re Carissa G. (1999) 76 Cal.App.4th 731, 734 [90 Cal.Rptr.2d 561].)
(2) By law, a county's social services agency acts as a representative of the state, standing in loco parentis to the minor in a proceeding which has as its primary consideration the welfare of the minor. (In re Jennifer G. (1990) 221 Cal.App.3d 752, 759 [270 Cal.Rptr. 326].) The agency serves as a special arm of the juvenile court, investigating the status of the child and reporting its findings to the court. (In re Malinda S. (1990) 51 Cal.3d 368, 377, fn. 8 [272 Cal.Rptr. 787, 795 P.2d 1244].) If it concludes that de facto parent status is no longer appropriate, the agency has the authority to file a noticed motion asking the juvenile court to terminate de facto parent status. (In re Brittany K. (2005) 127 Cal.App.4th 1497, 1513 [26 Cal.Rptr.3d 487] (Brittany K.); In re Patricia L. (1992) 9 Cal.App.4th 61, 67 [11 Cal.Rptr.2d 631] (Patricia L.).)
Given its status in loco parentis and its authority to oppose or seek termination of de facto parent status, we conclude that the agency has a legally cognizable interest that was injuriously affected by the juvenile court's decisions. (See In re Paul W., supra, 151 Cal.App.4th at p. 55; In re Carissa G., supra, 76 Cal.App.4th at p. 734.) The agency was aggrieved by the juvenile court's denial of its motion to terminate C.S.'s de facto parent status and the grant of K.F.'s application for de facto parent status over its objection. Thus, it has standing to raise challenges to the juvenile court's determinations of de facto parent status by appealing the relevant orders. Having determined that the agency's appeal is properly before us, we turn to the merits of the issues raised in its appeal.

III. C.S.'S DE FACTO PARENT STATUS

A. Was Termination Compelled?

(3) First, the agency contends that the juvenile court refused to follow binding California Supreme Court precedent, thereby committing legal error when denying its motion to terminate C.S.'s de facto parent status. De facto parent status does not terminate automatically or by operation of law, unless *860 the dependency itself is terminated. To formally terminate de facto parent status, the agency has the burden of establishing a change of circumstances that no longer supports the status. (Patricia L., supra, 9 Cal.App.4th at p. 67; see Super. Ct. Alameda County, Local Rules, rule 5.532(e).) Examples of such a change of circumstances are that a psychological bond no longer exists between the de facto parent and the child, or that the de facto parent no longer has reliable or unique information about the child that could be useful to the juvenile court. (Brittany K., supra, 127 Cal.App.4th at pp. 1513-1514; Patricia L., supra, 9 Cal.App.4th at p. 67.)
Typically, we review an order denying a motion to terminate de facto parent status for an abuse of discretion. (See, e.g., Brittany K., supra, 127 Cal.App.4th at pp. 1512-1515 [grant of motion to terminate].) In this matter, the agency argues that a different standard of review should apply. It asserts that as a matter of law, C.S.'s serious physical abuse of D.R. required the juvenile court to grant its motion to terminate his de facto parent status. In essence, it reasons that a juvenile court's finding of serious physical abuse constitutes a change of circumstances warranting automatic termination of de facto parent status.
(4) The California Supreme Court has held that when an adult commits sexual abuse or serious physical abuse against a child, that adult has undermined the child's physical and psychological need for care and affection. (In re Kieshia E. (1993) 6 Cal.4th 68, 78 [23 Cal.Rptr.2d 775, 859 P.2d 1290] (Kieshia E.); see In re B.G. (1974) 11 Cal.3d 679, 692, fn. 18 [114 Cal.Rptr. 444, 523 P.2d 244].) For this reason, one who causes the onset of juvenile dependency proceedings by committing sexual or other serious physical abuse on a child in his or her charge forfeits any opportunity to share in the legal decisions about the victim's future care and welfare that were made necessary by the perpetrator's misconduct. (Kieshia E., supra, 6 Cal.4th at p. 78.) When there is an adjudication that a child is within the jurisdiction of the juvenile court because a nonparent caretaker committed a substantial harm such as sexual or other serious physical abuse,[4] then the perpetrator's interest in the juvenile dependency proceedings are extinguished. As a matter of law, the views and evidence that the perpetrator might offer are insufficiently relevant to justify standing to participate in disposition *861 proceedings. By an intentional act, the perpetrator has rejected the ongoing parent-nurturer function that is crucial to the privilege of participation as a de facto parent. (Kieshia E., supra, at p. 78.)
On appeal, the agency asserts that Kieshia E. compelled the juvenile court to grant its motion to terminate de facto parent status. The juvenile court heard this argument and rejected it, finding that it was entitled to determine whether the serious physical abuse inflicted rose to the level of that which would trigger application of Kieshia E. We agree that the juvenile court was not required to automatically terminate C.S.'s de facto parent status, for several reasons.
(5) Kieshia E. is distinguishable from the case before us for two reasons. In Kieshia E., the juvenile court was faced with an initial application for de facto parent status. (See Kieshia E., supra, 6 Cal.4th at pp. 73-74.) The California Supreme Court held that a nonparent may not obtain de facto parent status if the juvenile court has determined that the minor is a dependent child because of sexual abuse or serious physical abuse committed by the nonparent. (Id. at p. 78; In re Leticia S., supra, 92 Cal.App.4th at p. 382.) In D.R.'s case, the juvenile court was not asked to grant de facto parent status, but to revoke a status already given. C.S. has been D.R.'s de facto parent since he was 18 months old. The juvenile court was not entertaining an initial application, but considering a motion to terminate an official recognition of an ongoing relationship.
(6) An initial application for de facto parent status raises different concerns than does a motion to terminate that status. On an initial application, the applicant bears the burden of proof that he or she can assist the juvenile court by providing information about the minor. In order to provide the juvenile court with such information, de facto parent status is liberally granted. (In re Michael R. (1998) 67 Cal.App.4th 150, 155 [78 Cal.Rptr.2d 842] (Michael R.); Patricia L., supra, 9 Cal.App.4th at p. 67.) By contrast, when a motion for termination of de facto parent status is made, the agency bears the burden of proving a change of circumstances to demonstrate the merit of such termination. (See Brittany K., supra, 127 Cal.App.4th at pp. 1513-1514; Patricia L., supra, 9 Cal.App.4th at p. 67.) The matter before us illustrates the significance of this distinction. To terminate de facto parent status after having given judicial approval to a lifelong relationship between D.R. and C.S. without demonstrating that the depth of that relationshiphowever flawedis unchanged implicates the minor's interests to a greater degree than it would to have precluded that relationship from the onset.
*862 (7) Second, the stage of the dependency proceedings is also a key difference. The dependency in Kieshia E. resulted from sexual abuse by the proposed de facto parent. (See Kieshia E., supra, 6 Cal.4th at p. 78.) When a juvenile court finds that a nonparent has committed such abuse and has deemed it necessary to make the child a dependent of the court, our Supreme Court bars the abuser from intervening in the same proceeding as a de facto parent. (Id. at pp. 79-80; In re Merrick V., supra, 122 Cal.App.4th at p. 257; In re Leticia S., supra, 92 Cal.App.4th at pp. 382-383; In re Jonique W. (1994) 26 Cal.App.4th 685, 696 [31 Cal.Rptr.2d 601].) An applicant for de facto parent status is automatically disqualified if he or she caused harm to the minor. (In re Merrick V., supra, 122 Cal.App.4th at p. 257.) The abuser forfeits the opportunity to appear as a party, to be represented, and to give evidence about an appropriate disposition in a dependency proceeding caused by that person's misconduct. (Kieshia E., supra, 6 Cal.4th at p. 80; see In re Leticia S., supra, 92 Cal.App.4th at pp. 382-383.)
By contrast, D.R.'s dependency did not result from C.S.'s corporal punishment, but from L.H.'s failure to provide for him many years earlier. From the time the minor was an infant, C.S. took responsibility for D.R., offering him a home and providing for his care. The uncle continued to do so for 12 years, often under trying circumstances, until D.R. was removed from C.S.'s home in June 2008. In November 2008, the juvenile court found true an allegation that C.S. had administered corporal punishment on D.R. When it did so, it continued D.R.'s dependencyit did not institute dependency proceedings. Given D.R.'s many challenges, it is apparent that his dependency would have continued beyond the time of the June 2008 incident, even if the commissioner had not found that C.S. had inflicted corporal punishment on the minor.
(8) These distinctions suggest to us that Kieshia E. may not apply at all to the case before us. However, even if we assume arguendo that Kieshia E. does apply and that the force of that decision would automatically disqualify C.S. from becoming a de facto parent if he were found to have committed serious physical abuse, we conclude the juvenile court was required to make a threshold determination whether C.S.'s misconduct was the type of serious physical abuse contemplated by our state's high court in order to trigger automatic termination. In the case before us, the juvenile court found that C.S.'s conduct constituted serious physical abuse, but concluded that the single incident of misconduct found to have occurred did not rise to the level warranting termination of his de facto parent status.[5] In *863 our view, this threshold determination was necessarily within the juvenile court's authority to make. Thus, assuming arguendo that Kieshia E. applied at all to the motion to terminate C.S.'s de facto parent status, the juvenile court committed no legal error by concluding that his misconduct did not trigger mandatory loss of that status. (See In re Leticia S., supra, 92 Cal.App.4th at p. 381 [arbitrary, capricious or patently absurd determination constitutes legal error and abuse of discretion].)

B. Abuse of Discretion

Alternatively, the agency argues that the juvenile court abused its discretion in denying the motion to terminate C.S.'s de facto parent status. In this matter, the juvenile court found thatdespite the fact that D.R. had been removed from C.S.'s home for nearly 10 monthsthere was still a psychological bond between the two. It also noted that C.S. had begun to engage in rehabilitative work to change his parenting behaviorprogress that the juvenile court made clear that he would be required to continue to display in order to regain custody of the minor. It concluded that continuing C.S.'s de facto parent status was in D.R.'s best interests.
On a motion to terminate de facto parent status, the agency must establish a change of circumstances warranting termination. (Brittany K., supra, 127 Cal.App.4th at pp. 1513-1514; Patricia L., supra, 9 Cal.App.4th at p. 67.) On appeal from the juvenile court's order denying a motion to terminate, we review the order for an abuse of that court's discretion. (See Brittany K., supra, 127 Cal.App.4th at pp. 1512-1515; Michael R., supra, 67 Cal.App.4th at p. 156 [initial application case].) In most cases, the juvenile court will not abuse its discretion if substantial evidence supports its underlying factual findings. (See Michael R., supra, at p. 156.)
The juvenile court found that D.R. retained his psychological bond with C.S., despite the fact that they have lived apart for many months. Implicit in the juvenile court's denial of the agency's motion is the finding that even the physical abuse that C.S. inflicted on D.R. has not lessened that bond. Given the lifelong relationship between the minor and his uncle, it is likely that C.S. still has information about D.R. that could be useful to the juvenile court. Thus, the juvenile court impliedly found that the agency's showing of a change of circumstances was insufficient to warrant termination. Substantial evidence supports these findings. (See Michael R., supra, 67 Cal.App.4th at p. 156.) On these facts, we conclude that the juvenile court did not abuse its discretion in denying the motion to terminate C.S.'s de facto parent status.

*864 IV. K.F.'S DE FACTO PARENT STATUS
(9) The agency also contends that the juvenile court abused its discretion in granting K.F.'s application for de facto parent status. A finding of de facto parent status turns on the unique circumstances of each case. (Brittany K., supra, 127 Cal.App.4th at p. 1513; Michael R., supra, 67 Cal.App.4th at p. 155.) The juvenile court applies a preponderance of evidence standard to make the necessary factual findings related to a de facto parent application. K.F. bore the burden of proof on this issue. (See Michael R., supra, 67 Cal.App.4th at p. 155; Patricia L., supra, 9 Cal.App.4th at p. 67.) Normally, because a juvenile court can only benefit from information known about the child from sources beyond the natural parents, an application for de facto parent status is often granted. (Michael R., supra, 67 Cal.App.4th at p. 155; Patricia L., supra, 9 Cal.App.4th at p. 67.)
On appeal, the agency assertson a vicarious disqualification theory that K.F.'s application for de facto parent status should have been automatically denied for many of the same reasons that C.S.'s de facto parent status should have been terminated. Having rejected the agency's premise in C.S.'s case, we necessarily reject it when evaluating the order granting K.F. similar status. Instead, on appeal, we defer to the juvenile court's factual findings, if there is substantial evidence to support those underlying findings. As the ultimate question of whether an application for de facto parent status should be granted or denied is one for the discretion of the juvenile court, we apply an abuse of discretion standard of review. (See Michael R., supra, 67 Cal.App.4th at p. 156 [de facto parent status denied].)
(10) When considering an application for de facto parent status, the juvenile court considers such factors as the degree to which the child is psychologically bonded to the applicant; whether the applicant has assumed the role of a parent on a day-to-day basis for a substantial period of time; whether the applicant has unique knowledge about the child; whether the applicant attends juvenile court hearings; and whether the juvenile proceedings could result in an order permanently foreclosing future contact between the child and the applicant. (Brittany K., supra, 127 Cal.App.4th at p. 1513; Michael R., supra, 67 Cal.App.4th at p. 155; Patricia L., supra, 9 Cal.App.4th at pp. 66-67; see Cal. Rules of Court, rule 5.502(10).) The court should also consider whether the applicant has committed substantial harm against the child. (Michael R., supra, 67 Cal.App.4th at p. 155; see In re Vincent C. (1997) 53 Cal.App.4th 1347, 1357-1358 [62 Cal.Rptr.2d 224].)
*865 In the case before us, the juvenile court found that K.F. had actively served in a parenting role for D.R.'s benefit. It found no evidence that K.F. condoned C.S.'s physical abuse of D.R. There was also evidence that K.F. attended juvenile court hearings and that he had information about D.R. particularly related to the medications that the minor had takenthat could be useful to the juvenile court in determining how best to provide for the minor's needs. Under these circumstances, the juvenile court acted within its discretion to grant K.F. de facto parent status.
The juvenile court orders are affirmed.
Ruvolo, P. J., and Rivera, J., concurred.
NOTES
[1] We take judicial notice of the record on appeal in a recent matter involving the same minor. (In re D.R. (June 15, 2010, A123778) [nonpub. opn.].) D.R.'s mother, L.H., and C.S. assert that the agency's appeal of the de facto parent rulings that are the subject of the present appeal are grounded in the juvenile court's ruling on the supplemental petition, which is at issue in the related appeal.
[2] At this hearing, C.S. also advised the court that he was seeing a therapist on a weekly basis and that he had completed a parenting program with an emphasis on teen parenting. The agency objected that C.S. was doing this on his own and was not working with the agency. It protested that no reunification was likely to occur if C.S. refused to work with the agency.
[3] In the related appeal, we granted C.S. and L.H.'s request to take judicial notice of two transcripts and an April 6, 2009 minute order. At that time, we deferred a determination of the relevance of those three items. The transcripts are already part of the record on appeal in the related matter, of which we have taken judicial notice in this matter, as well. (See fn. 1, ante.) As the April 2009 minute order is the order from which the agency appeals in the matter now before us, we find that it is relevant to the present appeal. (See Evid. Code, §§ 210, 350.)
[4] Some courts have interpreted Kieshia E. more broadly, applying it in circumstances beyond sexual abuse or serious physical abuse. (See, e.g., In re Merrick V. (2004) 122 Cal.App.4th 235, 257 [19 Cal.Rptr.3d 490] [grandmother indirectly caused minor to be at risk of neglect because of parent's drug abuse]; In re Leticia S. (2001) 92 Cal.App.4th 378, 382 [111 Cal.Rptr.2d 810] [methamphetamine left within minor's reach].)
[5] We note that the juvenile court advised C.S. that if he engaged in any further abuse, it would terminate his de facto parent status sua sponte.