Filed 11/17/14  In re Noah F. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re NOAH F., <br><br> a Person Coming Under the Juvenile Court Law. | B256032 <br><br> (Los Angeles County Super. Ct. No. CK93760) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DENISE H., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Phillip L. Soto, Judge.  Dismissed.

Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Denise H. appeals from an order denying her Welfare and Institutions Code section 388[1] petition to place her son, Noah F., with his maternal grandmother, Yvonne H. We conclude she has no standing to prosecute this appeal and dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

Denise gave birth to Noah in 2012, when she was 15 years old.[2] At the time Denise was a dependent child of the court because of sexual abuse by her mother Yvonne's male companion, which caused Denise to run away from home. The Los Angeles County Department of Children and Family Services (the Department) detained Noah on May 29, 2012 when Denise walked out of a Team Decision Making meeting and did not return. Denise stated that she did not want to participate in family reunification services and did not care what happened.

On June 1, 2012 the Department filed a petition under section 300, subdivision (b), alleging that on several occasions Denise left Noah with Yvonne without making plans for Noah's care. In addition, Denise had mental and emotional problems, for which she failed to participate in recommended treatment. The juvenile court found a prima facie case for detention.

In a July 2, 2012 jurisdiction/disposition report the Department noted that Denise was living in a group home that did not allow children to live with the residents. At Denise's request Noah had been placed temporarily with Denise's godmother, A.W., while the Department looked for a placement for both Denise and Noah.

---

[1] All further section references are to the Welfare and Institutions Code.

[2] Noah's alleged father, DeAndre H., could not be located and did not participate in the proceedings. He is not a party to this appeal.

The Department reported on August 20, 2012 that it had found a placement for Denise and Noah and was making arrangements to place them. Yvonne had indicated interest in having the Department place Noah with her and was gathering documentation for an evaluation under the Adoption and Safe Families Act of 1997 (42 U.S.C. § 670 et seq.) (ASFA).[3]

On August 22, 2012 the juvenile court sustained the petition as amended. The court ordered Denise to participate in parenting classes, anger management classes, and counseling. The court released Noah to Denise on the condition that she live in an approved placement.

Unfortunately, on October 23, 2012 the Department had to remove Denise and Noah from the approved placement after Denise was involved in a violent altercation. The Department was unable to contact A.W. and placed Noah with a foster family. On October 26 the court ordered Noah detained and ordered reunification services and monitored visitation for Denise. The court also ordered the Department to evaluate Yvonne and A.W. as placement resources and to grant them unmonitored visitation if appropriate.

Yvonne told a dependency investigator that she was still interested in having Noah placed with her, but she required a criminal waiver before she could submit a referral for an assessment under ASFA. A.W. stated that she would prefer that the Department place Noah with Yvonne, but if that was not possible, she wanted him placed with her. Her home had already been approved for placement.

For the six-month review hearing on May 24, 2013, the Department reported that Noah was doing well in his foster home, and the foster parents were interested in adopting him. Denise was not consistent in visiting Noah, she continued to have

---

**3** ASFA sets federal guidelines for foster care and relative care placements. (*In re Noe F.* (2013) 213 Cal.App.4th 358, 365, fn. 2.) Compliance with ASFA is necessary to receive federal funds for foster care and adoption assistance. (*In re Ethan C.* (2012) 54 Cal.4th 610, 634, fn. 16.)

difficulty obeying the rules in her foster placement, and she had been arrested on April 17 for loitering for the purpose of prostitution. Denise was also not complying with court orders to participate in services. Meanwhile, Yvonne had been having unmonitored visitation with Noah on weekends. She had obtained a criminal waiver, and the CSW had submitted a referral for an assessment under ASFA. Yvonne wanted to become Noah's legal guardian if Denise was unable to reunify with Noah.

Denise refused to attend the six-month review hearing. She was leaving her foster home without permission, was smoking marijuana, and was charged with vandalism. The Department moved her to a different placement, but the problems with her behavior continued.

On June 25, 2013 the juvenile court terminated family reunification services for Denise, set a section 366.26 permanency planning hearing, and ordered the Department to assign an adoption worker to the case. Denise did not attend the hearing, and the court denied her visitation until she returned to her placement. The Department notified her of her right to file a writ petition to challenge the court's order.

On July 16, 2013 the CSW reported she had "received an email from ASFA stating that there were serious concerns regarding the caregiver, Yvonne H[.] due to her extensive history with [the Department]. [Yvonne] has 8 biological children and 3 of her children were adopted in the 1990's due to her being incarcerated for drug use." Because Yvonne had made changes in her life since then, the Department arranged a meeting to discuss the ASFA issue. The ASFA CSW stated that "due to the fact that [Yvonne] currently has an open case with her daughter Denise and the fact that three of her sons were adopted out in the 1990's, ASFA could not approve the home. ASFA indicated that [Yvonne's] primary focus should be reunifying with Denise."

In its October 22, 2013 section 366.26 report the Department noted that Noah's foster family wanted to adopt him, and their home study had been approved. The Department did not consider Yvonne an appropriate placement. The Department did not consider placement with A.W., who was not a relative and had not established a bond with Noah. Denise's whereabouts at the time were unknown.

4

Neither Denise nor Yvonne attended the section 366.26 hearing.  Counsel for Denise told the court, however, that Yvonne "has been requesting placement of the child, and he's been enjoying weekend overnight visits.  She's unable to be ASFA-approved because of the underlying open case for [Denise's section] 300 petition.  However, it doesn't seem as if there is any actual risk beyond the ASFA issue since the Department is allowing weekend overnights.  I would ask for placement of [Denise's] baby, the child Noah, with [Yvonne] seeing that she does not need ASFA for any sort of funding issue and that [Denise] could make an appropriate plan by allowing [Noah] to go with [Yvonne]."  Counsel for the Department told the court that Yvonne's "home study could never be approved."  The court stated that it "can't close without ASFA," but it would refer the case to see if the parties could work out a plan for visitation for Yvonne after adoption.  The court continued the case to January 29, 2014.

On January 28, 2014 counsel for Denise filed a petition pursuant to section 388.  Counsel for Denise stated that the court's order should be changed because the "[c]ourt did not allow the minor mother Denise H[.] to make an appropriate plan of allowing her child Noah F[.] to reside with the maternal grandmother Yvonne H[.]"  The "new information" in the request was based on the fact that Yvonne had been visiting with Noah, was living with two of her daughters, was an honor student in college, and had completed a county jail rehabilitation program in 1996.  Counsel indicated that Denise was currently in juvenile hall.

Denise appeared at the January 29, 2014 hearing.  The court continued the matter to April 22 for a contested hearing under section 366.26 and for a hearing on the section 388 petition.

In an April 17, 2014 report the Department repeated its concerns about the lack of ASFA approval.  The Department stated that, although Yvonne had made significant progress in her life, her progress did not negate the fact that she failed to reunify with and parent her children.  The Department's "placement policy for extended family members and relatives ha[s] not changed regarding any person(s) who had a substantiated child abuse referral history or [the Department]/Court case home cannot be ASFA approved

5

and [the Department] cannot place a child in a home that has not been ASFA approved." The Department therefore recommended that the court deny the section 388 petition.

The court continued the hearing to April 28, 2014. Yvonne attended the hearing; Denise did not. Counsel for Denise argued that "[u]nder the law, the mother is supposed to be allowed to make an appropriate plan." He argued that the Department prevented her from doing so, "[a]nd we can see [from] the Department's subsequent actions that they actually saw the folly of their ways originally and were trying to place Noah with his grandmother basically the entirety of the case." Counsel argued that "[t]he only impediment [to placement with Yvonne] was again that they were worried that ASFA could not be approved because [Yvonne] had an open case with [Denise] as the minor. Now that was an improper consideration since the Department should have originally allowed [Denise] to make an appropriate plan at the inception of the case, both at the initial inception and then again when Noah was re-detained from [Denise]." Counsel further pointed out that Yvonne had "completely turned her life around" since she lost custody of her sons, Yvonne had two of her children living with her, and Denise's case had been closed. He asserted that there was no impediment to ASFA approval and no reason why Noah could not be raised by family members.

Counsel for Noah noted that Yvonne never requested a hearing on the Department's failure to approve her home for placement. Counsel could not "ask [the] court at this juncture to remove [Noah] from the foster home he's been at and placed with a grandmother because essentially it's asking the mother who is still trying to make an appropriate plan. She was AWOL for most of the reunification period, and it just seems now a little too late to ask to remove [Noah] from a placement."

Counsel for Denise acknowledged that he was unaware of any law that would allow a mother to make a placement plan after reunification services had been terminated. Counsel stated he "was just highlighting the Department's failure at the inception of the case and then again" when Noah was re-detained to allow Denise "to make an appropriate plan, which she requested at both junctures." He added that "[i]t is not like you are taking the child from a known to an unknown. [Yvonne] has been extremely

6

consistent in visitation. The Department is allowing overnight weekend visits for a year now almost." Counsel for the Department argued that the section 388 request was procedurally improper. Yvonne never challenged any of the court's rulings, and Denise never filed a writ petition challenging the order setting the section 366.26 hearing.

The court stated the "[t]he notion that his parent should be given an opportunity to have the child back, placed with them and work with the county to have an alternative plan, such as releasing that child to a relative . . . , really goes to the notion of reunification. And presupposes that the parent is ready, willing [and] able to work with the county with services, so they can—at least some time in the future take the child back into their custody. Or otherwise give the child up for adoption or legal guardianship to that family member . . . ." The court further stated that the parent should also maintain contact with the Department. "In instances such as this where the mother has been AWOL much of the time during the reunification phase, [those] conditions have not been met."

The court added that Denise's "counsel could have insisted that an administrative review gone on or a special writ be made to look at the ASFA issue. None of that was done." In the meantime, Noah had been with the prospective adoptive parents for a long time and had bonded with them. The court found there was no reason to believe that Yvonne would be able to get ASFA clearance, and the case was now in the permanency planning stage, rather than the reunification stage. The court stated that Denise's lack of participation in the reunification plan demonstrated "that she was not interested in getting this child back or working with the Department . . . to have a family member or family friend raise the child in her place. She is coming in at the last minute, eleventh hour to try and convince the court that a different plan could have and should have been implemented sets the whole process on its head." The court concluded that it was not in Noah's best interest to be removed from his prospective adoptive family and placed with someone "who only just may, may be able to adopt this child."

The court denied the section 388 motion. The court then made the appropriate findings and terminated Denise's parental rights. She timely appealed.

7

Denise contends that the juvenile court's "focus was misplaced," that she demonstrated a change of circumstances, and that it was in Noah's best interests to make the requested change. The Department argues that Denise does not have standing to appeal the court's denial of her section 388 petition and, in any event, the court did not abuse its discretion in denying the petition. We agree with the Department that Denise does not have standing, and we therefore dismiss the appeal.

"To have standing, a person must have rights that may suffer actual or threatened injury." (*In re D.R.* (2010) 185 Cal.App.4th 852, 859; see *In re Jayden M.* (2014) 228 Cal.App.4th 1452, 1459, petn. for review pending, petn. filed Oct. 6, 2014 ["'only a person aggrieved by a decision may appeal'"]; *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1034 ["'[w]hether one has standing in a particular case generally revolves around the question whether that person has rights that may suffer some injury, actual or threatened'"].) In dependency proceedings, a parent has no standing to raise issues affecting the child's or a relative's rights, and can only raise issues affecting his or her rights. (*In re Jayden M.*, *supra*, at p. 1459; see *In re J.T.* (2011) 195 Cal.App.4th 707, 719 ["a parent lacks standing to raise an issue [where] the parent's personal interests were not affected"].)

"'For purposes of appellate standing in dependency cases . . . "[t]he parent's primary interest in dependency is usually reunification."'" (*In re T.G.* (2010) 188 Cal.App.4th 687, 692.) Where, as here, the juvenile court has terminated reunification services, a parent generally has no standing to raise issues relating to the child's placement, because resolution of those issues will have no effect on reunification. (*Cesar V. v. Superior Court*, *supra*, 91 Cal.App.4th at p. 1035; see *In re Jayden M.*, *supra*, 228 Cal.App.4th at p. 1460 ["[o]nce a parent's reunification services have been terminated, the parent has no standing to appeal relative placement preference issues"]; see also *In re K.C.* (2011) 52 Cal.4th 231, 236 ["after reunification services are terminated . . . 'the parents' interest in the care, custody and companionship of the child [is] no longer

8

paramount,'" and instead "'at this point "the focus shifts to the needs of the child for permanency and stability"'"].)  As an exception to this rule, courts have held that a parent has standing to challenge a placement order that could affect the applicability of an exception to termination of parental rights.  (See *In re A.S.* (2012) 205 Cal.App.4th 1332, 1339-1340; *In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1053-1054.)  Because here the juvenile court terminated reunification services before Denise filed her section 388 petition, and because Denise does not challenge the termination of her parental rights, she has no standing to challenge the Department's refusal to place Noah with Yvonne.  (See *In re K.C.*, *supra*, at p. 238 [father did not have standing to appeal order "declining to place the child with grandparents" because the father "did not contest the termination of his parental rights in the juvenile court" and "[b]y thus acquiescing in the termination of his rights, he relinquished the only interest in [the child] that could render him aggrieved by the juvenile court's order"].)

In *Cesar V. v. Superior Court*, *supra*, 91 Cal.App.4th 1023, the father filed a section 388 petition alleging new evidence showing the paternal grandmother's suitability as a placement for his children.  (*Id*. at p. 1030.)  The court concluded that the father had no standing to appeal the juvenile court's failure to place the children with the grandmother because the father had stipulated to termination of reunification services and the denial of placement with the grandmother could have no effect on his interest in reunification.  (*Id*. at p. 1035.)  Nevertheless, because the grandmother had placed the issue before the court and the father had "formally joined in her arguments," and because "by stipulation of the parties and with the juvenile court's acquiescence" the father had extensively litigated the issue below, the court concluded that "[u]nder these circumstances" the father could present arguments in support of the grandmother's position.  (*Ibid*.)

In *K.C.*, however, the Supreme Court clarified the limited reach of *Cesar V*.  The Supreme Court first repeated the rule that "'the mere fact a parent takes a position on a matter at issue in a juvenile dependency case that affects his or her child does not alone constitute a sufficient reason to establish standing to challenge an adverse ruling on it.'

9

[Citation.]" (*In re K.C.*, *supra*, 52 Cal.4th at p. 239.) The Supreme Court explained that *Cesar V.* was not to the contrary. (*Ibid.*) Rather, "[w]hat the father in *Cesar V.* appears to have won was not standing to appeal, but a status loosely akin to that of amicus curiae" on behalf of the grandmother, who did have standing. (*Ibid.*) The Supreme Court in *K.C.* held that, because "[t]he only parties with standing to appeal—grandparents—did not file a timely notice of appeal," the father could not be granted similar status, and the Court of Appeal had properly dismissed the appeal. (*Ibid.*)

Here, as in *K.C.*, the only party with standing to challenge the Department's refusal to place Noah with Yvonne after the juvenile court terminated Denise's reunification services was Yvonne. Because Yvonne did not appeal from the denial of Denise's petition, there is no appeal on the merits in which Denise can participate as a kind of "amicus curiae." Therefore, the Court of Appeal "properly dismissed [her] appeal for want of standing . . . ." (*In re K.C.*, *supra*, 52 Cal.4th at p. 239.)

## DISPOSITION

The appeal is dismissed.

SEGAL, J.*

We concur:

WOODS, Acting P. J.

ZELON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.