[No. C056084. Third Dist. May 23, 2008.]

In re R.J. et al., Persons Coming Under the Juvenile Court Law.

TEHAMA COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v.
S.J., Defendant and Appellant.

## COUNSEL

John L. Dodd & Associates and John L. Dodd for Defendant and Appellant.

William James Murphy, County Counsel, and Christine J. Kim, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**NICHOLSON, J.**—S.J. (grandmother) is the paternal grandmother of R.J. and J.J. (minors), who were adjudicated dependent children of the court. The juvenile court summarily denied grandmother's request for de facto parent status. Grandmother appeals, contending (1) the juvenile court erred in denying her request without affording her an evidentiary hearing, and (2) the error violated her right to procedural due process under the Fourteenth Amendment to the United States Constitution. (Welf. & Inst. Code, § 395.) Finding no error, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Because the issue on appeal is limited, no extensive description of the dependency proceedings is needed.

In March 2007, the Tehama County Department of Social Services filed Welfare and Institutions Code section 300 petitions on behalf of both minors, alleging that mother and her live-in boyfriend were often intoxicated, mother's boyfriend forced R.J. to hug him and "touched her on her lower back," mother punched J.J. in the face, and, on another occasion, father did nothing when mother repeatedly punched J.J. At the time the petitions were filed, J.J. was 12 and R.J. was nine.

The minors were ordered detained and placed in a foster home.

Grandmother requested the minors be placed with her. In May 2007, the juvenile court summarily denied her request.

On June 12, 2007, grandmother filed de facto parent requests (Judicial Council form JV-295) and de facto parent statements (Judicial Council form JV-296) on behalf of both minors. The de facto parent statements contained a series of questions. When asked about the amount of time she spent with the minors, grandmother responded that she transported them between their parents' homes on Tuesdays, Wednesdays, and weekends. When asked about the activities she did with the minors, she responded that she went to school open houses and took the minors to the fair, dances, potluck dinners, "fly ins," and baseball games. She also stated that J.J. used her computer to research his homework. When asked about the kinds of information she had about the minors that others may not have, she said that the minors spoke to her about "almost everything, i.e. school, friends, and any problems," and that J.J. told her "he can't [keep] secrets from [her]." Grandmother executed both statements under penalty of perjury.

Grandmother also attached a letter from the minors' first grade teacher to each statement, wherein the teacher wrote that she became acquainted with grandmother when the minors were students in her class. Grandmother checked on the minors' academic progress. The minors told the teacher of their frequent after-school and weekend visits to grandmother's home during which they assisted grandmother in caring for her animals. The minors often spoke of grandmother "with pride, happiness, and a sense of enjoyment, expectation, and responsibility." The teacher viewed grandmother "as a stabilizing family member that anchored [the minors'] childhood lives" and "was shocked and saddened to learn that [grandmother] is **not** part of [the minors'] lives at the present time." (Original boldface.) To her knowledge, grandmother "ha[d] always been an integral factor in [the minors'] well being."

On June 14, 2007, the juvenile court checked the box on the de facto parent order (Judicial Council form JV-297) stating grandmother's de facto parent request "is denied" and signed and dated the order.

## DISCUSSION

### I

Grandmother first contends that "[d]enial of [her] de facto parent status without a hearing was error as she made the necessary prima facie showing."

"The concept of de facto parent has been judicially created to recognize limited rights in dependency cases for a person who has been found by the juvenile court to have assumed, on a day-to-day basis, the role of a parent, fulfilling the child's physical and psychological needs." (*In re Leticia S.* (2001) 92 Cal.App.4th 378, 381 [111 Cal.Rptr.2d 810].) "The purpose of conferring de facto parent status is to 'ensure that all legitimate views, evidence and interests are considered in dispositional proceedings involving a dependent minor.' [Citation.]" (*In re Merrick V.* (2004) 122 Cal.App.4th 235, 256 [19 Cal.Rptr.3d 490].)

" 'De facto parent' means a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period." (Cal. Rules of Court, rule 5.502(10).) "On a sufficient showing the court may recognize the child's present or previous custodians as de facto parents and grant standing to participate as parties in disposition hearings and any hearing thereafter at which the status of the dependent child is at issue. The de facto parent may: [¶] (1) Be present at the hearing; [¶] (2) Be represented by retained counsel or, at the discretion of the court, by appointed counsel; and [¶] (3) Present evidence." (Cal. Rules of Court, rule 5.534(e).)

A determination of whether or not a person qualifies as a de facto parent is a fact-based assessment, and "[t]he decision to grant de facto parent status depends on an assessment of the particular individual and the facts of the case." (*In re Leticia S., supra,* 92 Cal.App.4th at p. 381.) Factors courts generally consider in making this assessment include (1) whether the minor is psychologically bonded to the adult; (2) whether the adult has assumed the role of a parent on a day-to-day basis for a substantial period of time; (3) whether the adult possesses information about the minor unique from other participants in the process; (4) whether the adult has regularly attended juvenile court hearings; and (5) whether any proceeding may result in an order permanently foreclosing any future contact between the adult and the child. (*Ibid.*)

As a preliminary matter, grandmother fails to cite any authority for the proposition that a party requesting de facto parent status is entitled to a

hearing upon making a "prima facie showing." Nor can we find any such authority. Even assuming that a party requesting de facto parent status is entitled to an evidentiary hearing upon making a prima facie showing, grandmother failed to make such a showing here.

■ A party has not made a prima facie showing unless the facts alleged, if supported by evidence credited at the hearing, would sustain a favorable decision on the request. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806 [92 Cal.Rptr.2d 20] [discussing a prima facie case in the context of a petition for modification under Welf. & Inst. Code, § 388].)[1] Whether the showing is sufficient to require an evidentiary hearing is a matter committed to the broad discretion of the juvenile court, whose decision may be overturned only if it amounts to a manifest abuse of that discretion. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415 [33 Cal.Rptr.2d 85, 878 P.2d 1297].)[2] As we shall explain, the juvenile court did not abuse its discretion by summarily denying appellant's request for de facto parent status without an evidentiary hearing.

■ Notwithstanding the positive, nurturing, and loving relationship described in grandmother's statements and the teacher's letter attached thereto, the juvenile court reasonably could have concluded that grandmother's

---

[1] Unlike here, a party petitioning the court pursuant to Welfare and Institutions Code section 388 has a *statutory* right to an evidentiary hearing where the petition includes facts which make a prima facie showing that there has been a change in circumstances and that "the best interests of the child may be promoted by the proposed change of order." (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 668, 672, 675 [99 Cal.Rptr.2d 904]; Welf. & Inst. Code, § 388, subd. (c).)

[2] Appellant argues that de novo is the proper standard of review when a request for de facto parent status is summarily denied, citing *In re Hirenia* (1993) 18 Cal.App.4th 504 [22 Cal.Rptr.2d 443]. In that case, the juvenile court "ruled, as a matter of law, that appellant did not have standing to bring [a] petition for visitation rights either as a de facto parent or as a 'person having an interest . . . in a dependent child.' " (*Id.* at p. 512.) Finding the juvenile court's ruling was "analogous to an order sustaining a demurrer without leave to amend," the court concluded that it "must assume that the allegations of fact in the petition are true and independently determine whether they were sufficient to support a finding of 'standing' for appellant under any legal theory." (*Ibid.*) Applying that standard, the court found that "it appears that appellant is a de facto parent . . . ." (*Id.* at p. 514.) We first note that, in the 14 years since the opinion in *In re Hirenia* was filed, no case has ever followed it and applied a "demurrer-like standard" in reviewing the denial of a request for de facto parent status. To the contrary, in *In re Michael R.* (1998) 67 Cal.App.4th 150, 156 [78 Cal.Rptr.2d 842], the Fourth District, Division Two, rejected the application of such a standard, explaining "this standard does not take sufficient account of the lower court's function in ruling on the petition. Because the inquiry is by nature dependent upon factual determinations, including resolution of disputed facts and credibility, we believe appellate review should be by a deferential abuse-of-discretion standard." (See also *In re Jacob E.* (2004) 121 Cal.App.4th 909, 919 [18 Cal.Rptr.3d 15] [reviewing denial of request for de facto parent status for abuse of discretion].) Grandmother's attempt to distinguish *In re Michael R.* on the ground that "when the juvenile court [in that case] denied the grandmother's petition, it had information about her at its disposal" is not well taken. Here, the juvenile court also had "information" about grandmother at its disposal, namely grandmother's statements, executed under penalty of perjury.

involvement with the minors did not rise to the level of de facto status, i.e., she had not "assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection . . . ." (Cal. Rules of Court, rule 5.502(10).) Frequent visits and outings, while invaluable to a child, do not equate to de facto parent status. And although some of grandmother's involvement was akin to that of a parent—attending school open house events and communicating with and acquiring the respect of the minors' teacher—the juvenile court acted within its discretion in concluding that it was insufficient to establish de facto parent status.

## II

Grandmother next contends that "[d]enial of the de facto parent status motion without a hearing denied [her] procedural due process of law . . . ." This contention is premised on two erroneous presumptions: (1) that grandmother "made a prima facie showing of qualifying as a de facto parent," and (2) that grandmother possesses a constitutionally protected liberty interest in the custody and care of the minors. As previously discussed, grandmother failed to make a prima facie showing that she qualified for de facto parent status.

Nor has grandmother established that she has a constitutionally protected interest in the care and custody of the minors. She fails to cite any case that holds that a grandparent has a constitutionally protected interest in the custody and care of his or her grandchild. Nor are we aware of any such case. Rather, in *In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1508 [26 Cal.Rptr.3d 487], the court held that a "noncustodial grandparent of dependents of the juvenile court—has no substantive due process right to free association with the minors, or to maintain a relationship with them. The rights of grandparents to assert control over their grandchildren are restricted by state juvenile jurisdiction to determine and protect the best interests of dependent minors." Likewise, in *Miller v. California* (9th Cir. 2004) 355 F.3d 1172, the Ninth Circuit observed that "[w]hile there is no question that *parents* have a constitutionally protected liberty interest in making decisions about the care, custody, and control of their children [citations], we have never held that any such right extends to *grandparents.*" (*Id.* at p. 1175, original italics.)

Having failed to make a prima facie showing that she qualified for de facto parent status or establish a constitutionally protected interest in the care and custody of the minors, grandmother's claim that the juvenile court violated her right to due process of law fails.

## DISPOSITION

The judgment (order denying S.J.'s request for de facto parent status) is affirmed.

Davis, Acting P. J., and Hull, J., concurred.

On June 23, 2008, the opinion was modified to read as printed above.