Filed 4/4/13  In re L.D. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re L.D., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E056744 |
| Plaintiff and Respondent, | (Super.Ct.No. J231305) |
| v. | OPINION |
| T.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed.

Megan Turkat-Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Kristina M. Robb, Deputy County Counsel, for Plaintiff and Respondent.

1

L.D., the minor, was freed for adoption after his biological father murdered his mother when L.D. was 10 months old. After several maternal relatives failed to gain approval to adopt L.D., Tom C., a paternal third cousin requested adoptive placement. The San Bernardino Children and Family Services Agency (CFS) placed the minor with Tom C. and his wife, but Tom C. failed to submit all the paperwork necessary to complete the home evaluation over a 17-month period. In addition, Tom C.'s marriage became unstable over allegations that the relative was unfaithful to his wife and the wife's medical condition, which slowed down the completion of the home assessment. Tom C.'s dishonesty with CFS and failure to follow through with the requirements of the adoptive home evaluation caused CFS to seek removal of the minor from Tom C.'s home. Tom C. sought designation as a prospective adoptive parent which was granted and then nullified when the court ordered removal of the minor from his home. Tom C. then sought return of the minor, designation as de facto parent, and immediate completion of the adoption in request to change the order of removal. (Welf. & Inst. Code,[1] § 388.) The court denied the request and Tom C. appeals. On appeal, Tom C. challenges the denial of his section 388 petition on various grounds. We affirm.

## BACKGROUND

On February 3, 2010, the mother of L.D. was stabbed by L.D.'s father and she died as a result. A dependency petition was filed and the minor was declared a dependent

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

on April 5, 2010.  The court denied services to father, set a section 366.26 hearing, and placed the minor in the concurrent planning home of the maternal grandmother. Although the maternal grandmother's home appeared appropriate, it was not approved for adoption because she had a history of drug use and a theft conviction.  As a result of the denial of the exemption, the minor was removed from the home of the maternal grandmother, and he was placed in the home of a maternal cousin.

Although originally interested in adopting L.D., the maternal cousin became hesitant and subsequently decided she was not interested in adopting him.  At that point, a paternal third cousin, Tom C., expressed an interest in adopting the minor.  Tom C. was familiar with the father's family history of mental illness.  Tom C. had a degree in sociology, was self-employed as a real estate broker, and he and his wife lived in a spacious home.  Tom C. and his wife reported that they were married in 1987, but 22 years ago they had separated for one month due to Tom C.'s drinking, which was addressed through counseling.  The couple was eager to proceed with the adoption.  L.D. was placed in their home on November 19, 2010, and father's parental rights were terminated on November 23, 2010.

The adoptive home study of Tom C. and his wife was conducted by Olive Crest, a cooperative agency.  Initially, the couple was cooperative, compliant, flexible and available, being eager to move forward.  The minor was comfortable in the placement and attached to the adoptive parents.  On August 3, 2011, the social worker met with the adoptive parents separately to discuss the home study and learned that Tom C.'s wife was

3

suffering a recurrence of her lupus and the marriage was very unstable. By August 12, 2011, the child's behavior and the adoptive parents' limited parenting skills appeared to cause strain on the marriage such that the placement was deemed at risk of disruption. The court ordered Parent-Child Interactive Therapy (PCIT) and couples counseling for the adoptive parents to address these concerns.

During adoption home study, it was learned that the adoptive parents had separated for more than one month, contrary to Tom C.'s information, as Tom C.'s wife had three children during another relationship before reconciling with Tom C. After they reconciled, they married in 1988, but divorced within six months due to finances regarding the children of Tom C.'s wife from the prior relationship, but they continued to live together. They remarried 10 years before the placement of L.D. in the home, but failed to produce either a copy of the divorce papers or a copy of the marriage certificate as part of the home study process. They also failed to provide a completed reference form, birth certificates, tuberculosis test clearances for Tom C.'s wife, verification of income, Department of Motor Vehicles printouts, although the information had been requested in writing on two occasions, in June 2011, and December 2011.

Tom C.'s wife's serious medical issues caused her to fear she would not qualify as an adoptive parent, and caused Tom C. to become impatient to complete the process. To expedite the adoption process, he had his wife execute a waiver not to adopt, to avoid having to submit additional paperwork. In November 2011, the adoptive parents agreed

4

to put the adoption process on hold temporarily while they participated in couple's therapy and PCIT.

On November 28, 2011, Tom C. brought a female friend, K.L., to meet with the social worker. He claimed to have supplied all the paperwork requested (despite the letter from the adoption worker indicating it was still outstanding in December 2011) as part of the home study, and wanted to move the process along faster. In December 2011, the social worker learned that when Tom C. was not available to care for L.D., his female friend K.L., who had not been cleared by CFS, provided care for the minor, sometimes overnight at her home several times a week. In January 2012, the social worker contacted Tom's wife who confirmed that K.L. watched L.D. about three days per week, spending the night at her house and calling her "mommy."

That same month, K.L. left a voice message with the adoption worker who was conducting the home study requesting paperwork so she could co-adopt the minor with Tom C. Tom C. brought K.L. to PCIT meetings to participate in sessions, although the therapist did not permit it due to confidentiality of the proceedings. Tom C.'s dishonesty, as well as his display of impulse control issues, his failure to provide details regarding his relationships with family members, and difficulty coping with L.D.'s age-appropriate misbehavior, were causes for concern.

In March 2012, Tom C. published an article in the Black Voice News along with a photograph of the minor, in which he vented about his frustration with the adoption process, complaining about CFS. That same month, Tom C. and his wife informed the

PCIT therapist that her services were no longer needed, although they informed the social worker that they were still attending PCIT and couple's counseling. They further informed the PCIT therapist that they smoked marijuana in the backyard after L.D. was asleep. The adoption study recommended that Tom C.'s application to adopt L.D. be denied, and the social worker agreed with this opinion, recommending removal of L.D. from Tom C.'s home.

At a special hearing held on May 8, 2012, the court found that Tom C. qualified for prospective adoptive parent status and granted his request for that designation. However, at that same hearing, the court found it was in the minor's best interests to remove the minor from Tom C.'s home. The effect of the removal order was to terminate the adoptive parent designation.[2]

On May 21, 2012, Tom C. filed a petition to modify the court order (§ 388) removing L.D. from his adoptive placement citing biased inaccuracies by the social worker who was alleged to have hated Tom C., and also sought status as a de facto parent and immediate completion of the adoption. The petition was summarily denied on the ground it did not state new evidence or change of circumstances, nor did it promote the best interests of the child. On July 10, 2012, Tom C. appealed the denial of his section 388 petition.

---

[2] Tom C. appealed from the order of removal (E056442, *In re L.D.*), but that appeal was dismissed on June 27, 2012, for Tom C.'s lack of standing.

**DISCUSSION**

On appeal, father raises the following issues: (1) The court erred in denying Mr. C.'s section 388 petition where the lack of stable placement following the minor's removal from Mr. C.'s home showed it was in his best interests to return the minor to Mr. C.'s home; (2) The court erred in denying the section 388 petition without a relative placement evaluation of placement with Mr. C. under section 361.3; (3) Denial of Mr. C.'s section 388 petition did not address any of the factors set forth in section 361.3; (4) Mr. C. was still an appropriate and suitable placement pursuant to the criteria in section 361.3; and (5) the court abused its discretion in denying Mr. C.'s de facto parent status request. As we will show, only one issue is properly before us.

### a. Arguments 1 through 4:

Argument 1 seeks return of the minor based on the instability of the placement of L.D. after his return from Tom C.'s custody. This issue asks us to consider information obtained after Tom C.'s section 388 petition was denied in reviewing the trial court's order on his section 388. The information relating to the foster care placements after L.D.'s removal from Tom C.'s custody was included in a minute order from a nonappearance review hearing dated June 14, 2012, well after the notice of appeal of the section 388 denial was filed by Tom C.

We are prohibited from considering postjudgment evidence, and thus do not reach the merits of this issue. We consider the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.

7

(*In re Zeth S.* (2003) 31 Cal.4th 396, 405, citing *In re James V.* (1979) 90 Cal.App.3d 300, 304.)

Arguments 2, 3, and 4, ask us to reverse the section 388 order because the trial court did not consider the relative placement preference factors pursuant to section 361.3. However, no mention of relative preference was made in Tom C.'s section 388 petition. Because this issue was not presented to the trial court in the section 388 petition, this issue is forfeited. (*In re Jose C.* (2010) 188 Cal.App.4th 147, 161, citing *In re Cheryl E.* (1984) 161 Cal.App.3d 587, 603.) Even if Tom C. had included this issue, relative preference under section 361.3 is a moot point when a dependent child has been removed from a placement with the relative seeking preference.

Section 361.3 requires the juvenile court to give preferential consideration to a request by a relative for placement of the child with the relative when the child is removed from the physical custody of his or her parents. (§ 361.3, subd. (a).) The relative placement preference does not apply after parental rights have been terminated and the child has been freed for adoption. (*In re A.O.* (2004) 120 Cal.App.4th 1054, 1060, citing *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1031, 1033-1034.) At that stage, the licensed adoption agency is entitled to the exclusive custody and control of the child until an order of adoption is granted. (*In re B.C.* (2011) 192 Cal.App.4th 129, 147.)

Here, Tom C. was given preferential consideration at the time L.D. was initially placed with him. The removal of L.D. was based on a determination that the placement

8

was not in L.D.'s best interests.  Reconsideration of placement with Tom C. under the relative placement provisions of section 361.3 is not required after the relative placement has failed.

### b. Argument 5: Denial of De Facto Parent Status

The only issue properly before us is whether the trial court abused its discretion in denying the request for de facto parent status as requested in Tom C.'s section 388 petition.  A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist, and (2) the proposed change would promote the best interests of the child.  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 316-317.)  The petitioner bears the burden to show both a legitimate change of circumstances and that undoing the prior order would be in the best interest of the child.  (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529.)  The petition is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion.  (*Stephanie M.,* at p. 318; *In re B.C., supra,* 192 Cal.App.4th at p. 141; *In re S.J.* (2008) 167 Cal.App.4th 953, 959.)

Here, the petition contained no information regarding changed circumstances or new evidence.  Although the petition indicates that Tom C. sought, under item 8 of the JV-180 form, an order for de facto parent status, the actual order which Tom C. sought to modify is described under item 6, the removal of the minor from his home on May 8,

9

2012.  Tom C. did not include any reference to factual matters pertaining to his request for de facto parent status.

We agree that de facto parent status is not limited to those who are current caretakers, and may be extended to a person who has no officially recognized legal status. (*In re Hirenia C.* (1993) 18 Cal.App.4th 504, 514-515.)  Nevertheless, as a party submitting a section 388 petition, Tom C. had the burden of establishing a prima facie basis for relief by presenting evidence that he fell within the case law definition of a de facto parent.  (*Hirenia C.,* at p. 514; *In re R.J.* (2008) 164 Cal.App.4th 219, 224.)

The determination of whether a person qualifies as a de facto parent is a fact-based assessment and the decision depends on an assessment of the particular individual and the facts of the case.  (*In re R.J, supra,* 164 Cal.App.4th at p. 223.)  A party has not made a prima facie showing unless the facts alleged, if supported by evidence credited at the hearing, would sustain a favorable decision on the request.  (*Id.* at p. 224.)

The modification petition may not be conclusory.  (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.)  Specific allegations describing the evidence constituting the changed circumstances or new evidence is required.  (*Ibid.*; see also *In re Ramone R.* (2005) 132 Cal.App.4th 1339, 1348; *In re Edward H.* (1996) 43 Cal.App.4th 584, 593.) Pleadings are allegations, not evidence, and do not suffice to satisfy a party's evidentiary burden.  (*Soderstedt v. CBIZ Southern California, LLC* (2011) 197 Cal.App.4th 133, 154-155; *People v. Hallman* (1989) 215 Cal.App.3d 1330, 1340.)  The statutory standard for granting relief under section 388 would not be satisfied if the petition were allowed to

consist of general averments rather than specific allegations describing the evidence constituting the change of circumstances or new evidence. In other words, a party's mere request for de facto parent standing does not establish the propriety of granting such a request.

Here, the petition alleges no facts demonstrating new evidence or change of circumstances to support the request for de facto parent status. Although the juvenile court could consider previous reports which discussed the minor's placement with Tom C., the child had been removed from Tom C.'s care upon a finding that the placement was not in the best interests of the child. Tom C.'s petition relies upon his description of the relationship he had with L.D. before L.D. was removed from his home under the section of the petition relegated to information about how the proposed modification would promote the child's welfare. However, that information was before the court at the time of the decision to remove L.D. from Tom C.'s care after finding that the placement was *not* in the child's best interests.

Thus, even if Tom C. had alleged extant information in support of his request for de facto parent status, it would not support a finding of changed circumstances or new evidence to support the modification of the prior order removing the child from Tom C.'s home. Tom C. presented no evidence in his petition to support a different conclusion or to show why the removal order should be modified. Nor has he established how an order granting him de facto parent status would result in a modification of the prior removal order, or the trial court's determination that removal was in L.D.'s best interests.

11

The juvenile court did not abuse its discretion by denying the section 388 petition, including Tom C.'s request for de facto parent status.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

McKINSTER

J.

KING

J.