Filed 2/13/14  In re M. E. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M. E., A Person Coming Under the Juvenile Court Law. | B250422 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff;<br><br>        v.<br><br>MARCUS E.,<br><br>        Defendant and Respondent. | (Los Angeles County Super. Ct. No. CK75874) |

APPEAL from an order of the Superior Court of Los Angeles County, Elizabeth Kim, Juvenile Court Referee, (Pursuant to Cal. Const., art. VI, § 21.) and Margaret Henry, Judge.  Reversed and remanded.

Janette F. Cochran, under appointment by the Court of Appeal, for Appellant, C.H.

No appearance for Plaintiff.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Respondent, Marcus E.

C. H. (appellant), the foster mother of two-year-old M. E., appeals the juvenile court's denial of her request for de facto parent status. Appellant argues the juvenile court erred in denying her request because she had met her burden of showing she was entitled to de facto parent status. We agree and reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

M. E. was born premature on November 30, 2011, and tested positive for cocaine. On December 7, 2011, the Department of Children and Family Services (Department) filed a petition alleging that Claudia I.'s (mother) substance abuse endangered M.'s physical health, and that mother had a ten-year history of illicit drug abuse.[1] The Department also reported to the court that Marcus E. (father) had an extensive criminal history dating back to 1976. The court detained M. and she was placed in foster care.

On January 3, 2012, the Department filed a first amended petition which added the allegation that father had a criminal history. A second amended petition was filed on February 22, 2012, which alleged that father also used marijuana, rendering him incapable of providing regular care for M. and placing her at risk of abuse and neglect.

At the contested jurisdictional hearing on February 29, 2012, the court sustained the allegations against both parents and removed M. from her parents' custody.[2] The

---

[1]     Mother also had prior dependency cases involving her two older children, with whom she failed to reunify due to her illicit drug use.

[2]     Father appealed the court's jurisdictional findings against him as well as the removal order. (*In re M.E.* (B239887; filed on November 15, 2012) [nonpub. opn.].) We affirmed. (*Ibid.*)

court ordered random drug testing for father, individual counseling, and parenting courses, and granted him family reunification services. The court denied reunification services to mother, but ordered monitored visits for both parents.

On March 28, 2012, the Department informed the court that M. had been moved to a new foster home, and that it was assessing father's home for placement. On July 19, 2012, when M. was eight months old, she was moved again and placed with appellant. Appellant reported to the Department that M. was adjusting to her new home and thriving with regards to meeting developmental milestones.

On August 29, 2012, the Department informed the court that father consistently visited M. five times a week, had "good parenting skills" and had "formed a strong bond and attachment with the child." However, father had tested positive for illicit substances on three separate occasions, and had not shown up for two of his drug tests. Mother's visits were inconsistent.

With respect to appellant, the Department reported that M. appeared "happy and [was] adjusting well to [her] new placement," and that appellant was working on "increasing [the] child's hand strength through hand exercises and appropriate toys so that [the] child can latch onto her bottle." In addition, M. was "engag[ing] [appellant] with babbling and trying to talk."

At the six-month review hearing on September 4, 2012, the court continued reunification services for father. However, later that month, the Department filed

a Welfare and Institutions Code section 342[3] petition alleging that father had tested positive for marijuana and cocaine on multiple occasions, and had failed to regularly participate in the court-ordered substance rehabilitation program and random drug testing. The court sustained these allegations on October 10, 2012, and also continued reunification services and monitored visits for father.

On October 22, 2012, a Department social worker observed appellant to be "very caring towards" M. when the child was sick, and concluded that M. was "thriving in her current placement." On January 30, 2013, in preparation for the 12-month review hearing, the Department informed the court that father was complying his case plan, and that his visits with M. were going well. The Department further reported that appellant was "meeting M.'s needs by providing food, shelter, clothing and medical care as necessary; ensuring her overall well being. [The social worker] has observed various interactions between [appellant] and M. M. appears to be comfortable in her presence and looks to [appellant] when she needs comforting. It appears that the child is thriving in her care and the placement continues to be appropriate." Appellant told the social worker that she was willing to adopt M. if father did not reunify with her. At the 12-month review hearing, the court continued reunification services for father.

On May 6, 2013, appellant filed a request for de facto parent status *in propria persona*. She filed out the "De Facto Parent Statement" form to completion and used all

---

[3] Section 342 provides that "[i]n any case in which a minor has been found to be a person described by Section 300 and the petitioner alleges new facts or circumstances . . . sufficient to state that the minor is a person described in Section 300, the petitioner shall file a subsequent petition."

the space available to her on the form.  She wrote that she had provided daily care for M. since July 2012, and that she "love[d], care[d] for, fe[]d, clothe[d], interact[ed][,] play[ed] and engage[d], nurture[d] and assist[ed] [M.] with developmental milestones[.]"  The form asked applicants to provide "[k]inds of information [you] have about the child that others may not have (medical, educational, behavioral, etc.)," in response to which appellant stated "[m]edical [-] pre-natal exposure to drugs + alcohol, premature[;] [e]ducational [-] [d]aily [p]rogress milestones[;] [b]ehavioral [-] [e]motional [d]evelopment[.]"  Appellant also said that she had not attended court hearings but would like to receive notice and attend these hearings.  The court summarily denied appellant's request without a hearing.  Appellant timely appealed.

### *CONTENTIONS*

Appellant argues that the juvenile court erred in denying her request for de facto parent status because she met her burden of showing she was entitled to such status.

### *DISCUSSION*

A "de facto parent" is "a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period."  (Cal. Rules of Court, rule 5.502, subd. (10).)  "On a sufficient showing the court may recognize the child's present or previous custodians as de facto parents and grant standing to participate as parties in disposition hearings and any hearing thereafter at which the status of the dependent child is at issue."  (Cal. Rules of Court, rule 5.534, subd. (e).)

5

De facto parent status only entitles a person "to be present at dependency proceedings, to be represented by counsel, and to present evidence." (*In re Kiesha E.* (1993) 6 Cal.4th 68, 77.) It does not entitle a person to reunification services, custody, or visitation. (*Ibid.*) "The de facto parenthood doctrine simply recognizes that persons who have provided a child with daily parental concern, affection, and care over substantial time may develop legitimate interests and perspectives, and may also present a custodial alternative, which should not be ignored in a juvenile dependency proceeding." (*Ibid*.) We review the juvenile court's denial of a request for de facto parent status for substantial evidence.[4] (*In re Ashley P.* (1998) 62 Cal.App.4th 23, 26-30.)

"[T]he concept of de facto parenthood must be applied liberally." (*In re Hirenia C.* (1993) 18 Cal.App.4th 504, 514; *In re Jacob E., supra,* 121 Cal.App.4th at p. 919 ["de facto parent status ordinarily should be liberally granted."]) The rationale behind this liberal application is that "the views of such persons who have experienced close day-to-day contact with the child deserve consideration." (*In re A.J.* (1969)

---

[4]     Some courts have reviewed the denial of de facto parent status for an abuse of discretion. (See, e.g*., In re Jacob E.* (2004) 121 Cal.App.4th 909, 919.) However, an application for de facto parent status requires the court to consider whether the individual facts of the case show that the applicant has assumed the role of a parent and cared for the child. (See *In re Kieshia E., supra,* 6 Cal.4th at p. 78 ["the key to the privileged status of de facto parenthood is adherence to 'the role of parent,' both physical and psychological."]) Thus, the issue is more of a factual determination than a discretionary one, and the better approach is to use the substantial evidence standard of review. (See Seiser and Kumli, Cal. Juvenile Courts Practice and Procedure (2012) § 2.60A[2][a]; see, e.g., *In re Vincent C.* (1997) 53 Cal.App.4th 1347, 1356-1357; *In re Krystle D.* (1994) 30 Cal.App.4th 1778, 1808.)

274 Cal.App.2d 199, 202.)  As several courts have observed, "the juvenile courts can only benefit from having all relevant information bearing on the best interests of the child . . . . " (*In re Hirenia C., supra,* 18 Cal.App.4th at p. 514; *In re Rachel C.* (1991) 235 Cal.App.3d 1445, 1452 disapproved on other grounds in *In re Kieshia E., supra,* 6 Cal.4th 68; *In re Jacob E., supra,* 121 Cal.App.4th at p. 919.)

Moreover, "if it turns out that the information provided by the de facto parent is not helpful, the court need not give much weight to the input in making the difficult decisions it must make." (*In re Hirenia C., supra,* 18 Cal.App.4th at p. 514.)  Foster parents, in particular, "are usually the ones best equipped to aid the court" during the reunification period through participation as de facto parents.  (*Christina K. v. Superior Court* (1986) 184 Cal.App.3d 1463, 1469)

"Whether a person falls within the definition of a 'de facto parent' depends strongly on the particular individual seeking such status and the unique circumstances of the case.  However, the courts have identified several factors relevant to the decision. Those considerations include whether (1) the child is 'psychologically bonded' to the adult; (2) the adult has assumed the role of a parent on a day-to day basis for a substantial period of time; (3) the adult possesses information about the child unique from the other participants in the process; (4) the adult has regularly attended juvenile court hearings; and (5) a future proceeding may result in an order permanently foreclosing any future contact with the adult.  [Citations.]" (*In re Patricia L.* (1992) 9 Cal.App.4th 61, 66-67.)  "[A] juvenile court should not deny a request for de facto status based upon some vague concern that such participation will lengthen the hearings

7

or somehow interfere with the goal of providing the child with a stable and loving home." (*In re Vincent C.*, *supra*, 53 Cal.App.4th at p. 1358.)

Here, four out of the five factors identified in *In re Patricia L.* were present. The evidence indicated that appellant (1) was " 'psychologically bonded' " with M. by virtue of having been the infant's exclusive caregiver for ten months, (2) had assumed the role of parent on a day-to-day basis during that period of time, and (3) "possesse[d] information about the child unique from the other participants in the process" as a result of having taken care of M.'s medical and educational needs at a stage when a child's needs and behaviors change often. In addition, "future proceedings [could] result in an order permanently foreclosing any future contact" between M. and appellant should the court decide to reunify M. with father. (*In re Patricia L., supra,* 9 Cal.App.4th at pp. 66-67.) Furthermore, although appellant had not attended court hearings, she expressed an interest in being present for future hearings.

The Department had also noted that appellant was providing excellent care for M. The Department reported several times that appellant was providing an appropriate home for M. and that M. was doing well in appellant's care. The Department even informed the court that appellant was meeting all of M.'s needs, that appellant was "very caring" towards M., and that M. looked to appellant for "comforting." No report includes any criticism of appellant.

Although "a person who otherwise qualifies for de facto parent status may become ineligible by acting in a manner that is fundamentally inconsistent with the role of a parent," here, there was no evidence that appellant had ever harmed M. (*In re*

*Bryan D.* (2011) 199 Cal.App.4th 127, 142; *In re Merrick V.* (2004) 122 Cal.App.4th 235, 257 [an applicant for de facto parent status is "automatically disqualified" if he or she "substantially harms" the minor].) In fact, all the evidence before the court was positive and showed that appellant had taken care of M. on a day-to-day basis for almost a year.

Only father has opposed this appeal, arguing that appellant did not meet her burden of proof.[5] Specifically, father argues that appellant did not show that she possessed unique information regarding M.'s medical needs regarding "pre-natal exposure to drugs [and] alcohol" because appellant did not observe M. when she was born. However, M. was only eight months old when she was placed with appellant and appellant was in the best position to observe any continued effects from M.'s pre-natal exposure to illicit substances.

Furthermore, appellant also possessed unique information regarding M.'s development and behavior as appellant had cared for M. from age eight months to eighteen months. Appellant spent substantially more time with M. than either father or mother, and the evidence indicated that she had fulfilled all of M.'s needs by having "care[d] for, fe[]d, clothe[d], interact[ed][,] play[ed] and engage[d], nurture[d] and assist[ed] [M.] with developmental milestones[.]" (Cf. *In re Jacob E., supra,* 121 Cal.App.4th at pp. 919-921 [holding that, despite five years as caretaker, the grandmother failed to merit de facto parent status because she did not ensure the child's

---

[5] The Department did not take a position below regarding this issue or on appeal.

visits with siblings or meet his schooling and medical needs, and had exposed him to domestic violence and physical abuse]; cf. *In re R.J.* (2008) 164 Cal.App.4th 219, 224 [affirming the juvenile court's summary denial of the grandmother's request for de facto parent status where there was no evidence that the grandmother had assumed a parental role on a day-to-day basis, although the grandmother did have a "positive, nurturing, and loving relationship" with her grandchildren.])

Accordingly, appellant met her burden of showing that she was entitled to de facto parent status, and there was no evidence that she had harmed M. or failed to provide for her care such that she should be denied such status. The juvenile court thus erred in denying appellant's request for de facto parent status, and we reverse that ruling.

### *DISPOSITION*

The order denying de facto parent status is reversed.  The juvenile court is directed to enter a new order granting appellant's de facto parent application.

*NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

                                                          CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

ALDRICH, J.

11