Filed 2/10/22; certified for publication 2/15/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ABIGAIL L., a Person Coming Under the Juvenile Court Law. | B310601 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. HEATHER W., Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP00630A) |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen C. Marpet, Juvenile Court Referee. Reversed with directions.

Deborah Dentler for Defendant and Appellant.

Janet G. Sherwood for Advokids as Amicus Curiae on behalf of Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane E. Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Heather W., the former foster parent of Abigail L., appeals from the juvenile court's order denying her request for de facto parent status. Because the juvenile court erred in ruling Heather's request was moot, we reverse the order and direct the juvenile court to enter a new order granting the request.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Abigail Is Placed with Heather*

After the juvenile court removed her from her parents, Abigail lived with Heather for almost two years, from February 1, 2019, when Abigail was eight weeks old, to November 24, 2020, the date of the hearing that prompted this appeal.

In April 2019 the juvenile court declared Abigail a dependent child of the court under section 300 of the Welfare and Institutions Code[1] and denied her parents family reunification services.

Heather previously adopted two daughters from foster care and had another child placed with her when Abigail arrived.

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

Heather provided for all of Abigail's "physical and essential needs" and was the only parental figure in Abigail's life. Heather stated that Abigail called her "MaMa" and each of Heather's daughters "Sissy" and that Abigail was "deeply bonded" with Heather and her children. Heather committed to adopting Abigail if reunification failed.

B. *Heather's Relationship with Abigail's Half-sister Deteriorates*

At a juvenile court hearing, Heather learned Abigail had a 12-year-old half-sister, Anahi L. Anahi was also a dependent of the juvenile court, but had never lived with Abigail. The juvenile court ordered visitation for Anahi and Abigail beginning in May 2019, which Heather facilitated. Heather described Anahi as "disengaged," "uninterested," and "depressed" during Anahi's visits with her toddler half-sister. At Anahi's request, in June 2019 Heather agreed to let Anahi move in with her and Abigail. According to Heather, the Los Angeles County Department of Children and Family Services said Anahi's placement with Heather would not be for very long and would end when Anahi moved to Arizona to live with her aunt and uncle (who were unrelated to Abigail). Anahi began living with Heather in August 2019.

Heather claimed that Anahi "spiraled downhill psychologically" after the juvenile court terminated the parental rights of Anahi's parents. Anahi began "lashing out" at Heather and her children and threatened to "kidnap" Abigail and "run away to Arizona." In March 2020 Anahi told her social worker

3

that Heather slapped her. Heather denied the allegation and asked the Department to remove Anahi from her home. The Department's investigation of physical abuse "was closed as inconclusive but the investigation led to an additional allegation of general neglect and this allegation was closed as substantiated." The Department briefly placed Anahi in another foster home before placing her with her aunt and uncle in Arizona.

C.     *Heather Requests De Facto Parent Status, and the Department Files Its Section 366.26 Report*

Meanwhile, on January 28, 2020, Heather filed a request for de facto parent status. Heather stated that she provided for all of Abigail's daily physical, emotional, social, and developmental needs and that she knew Abigail's nap and bedtime routines, her likes and dislikes, and how to soothe her. Heather also said she took Abigail to her doctor appointments, attended court hearings in Abigail's dependency case, and provided written reports to the court about Abigail.

At a February 4, 2020 hearing on Heather's request for de facto parent status, the juvenile court stated: "I don't see somebody's trying to take the child away from you. You do get additional rights, once we do terminate parental rights, so you don't need a de facto motion for that. So, if we terminate parental rights 90 days from today in May then we don't need it." The court continued the hearing on Heather's request to May 20, 2020 to coincide with the selection and implementation hearing under section 366.26.[2]

---

[2]     Heather asserts that she originally requested de facto parent status before January 28, 2020, but that the clerk's

4

Heather filed another request for de facto parent status on May 13, 2020. She reiterated she had cared for Abigail continuously since Abigail was an infant, provided for all of Abigail's needs, attended juvenile court hearings involving Abigail, and facilitated Abigail's visits with her older half-sister. Heather also stated she had recently learned the Department had conferred with Anahi's attorney and her court-appointed special advocate "about whether to move [Abigail] to Arizona." Heather stated Anahi's aunt and uncle in Arizona were "total strangers to [Abigail]," did not visit or contact her, and did not contribute to her support.

On May 14, 2020 the Department filed its section 366.26 report. The Department detailed its concerns with Abigail's continued placement with Heather. In particular, the report stated the Department had "some doubts about the appropriateness" of Heather as Abigail's prospective parent because of Heather's "swift decision" to ask the Department to remove Anahi from her home. The Department stated that it had to consider "whether this could happen again with Abigail" and that placing Abigail with Anahi was "most likely in the best interest of" Abigail.

transcript does not include any documents concerning that request and that the reporter's transcript does not include proceedings from the date Heather claims the juvenile court denied that request. According to Heather, the court denied the prior request for the same reason it denied the January 28, 2020 request: Heather did not need de facto parent status because no one was trying to place Abigail with anyone other than Heather. Heather did not appeal from either of these orders.

The Department also reported that, because of the substantiated allegation Heather had neglected Anahi, Community Care Licensing was going to investigate whether to rescind Heather's foster home certification. The Department stated that, because of "the current circumstances and pending investigations," it could not recommend Heather as the prospective adoptive parent of Abigail. Instead, the Department reported it would evaluate placing Abigail with Anahi's relatives in Arizona.

The record does not indicate what transpired at the hearing scheduled for May 20, 2020, but on June 10, 2020 the juvenile court continued the section 366.26 hearing and the hearing on Heather's request for de facto parent status to November 24, 2020. Heather did not receive notice the juvenile court would hear her request on November 24, 2020, but she did receive notice the court would have a hearing designated "Other" on that date.[3] The notice informed Heather the social worker recommended Abigail remain in foster care with a permanent plan of "return home, adoption, . . . legal guardianship, or placement with a fit and willing relative, as appropriate."

On July 14, 2020 the Department notified Heather it intended to remove Abigail from Heather's home in 14 days and place Abigail with her sister in Arizona because Heather "was unwilling to let Abigail visit [the] caretakers of her half-sister

_____

[3] We grant Heather's motion for judicial notice of a document titled "Notice of Review Hearing – Juvenile," served on Heather on October 26, 2020. (See Evid. Code, §§ 452, 459.) We otherwise deny Heather's motions for judicial notice filed on July 19, 2021 and October 25, 2021.

during a planned sibling visit." The notice prompted counsel for Abigail to ask the court to prevent the Department from removing Abigail without a hearing. Counsel for Abigail stated Department social workers were "frustrated with [Heather's] communication with them, among other issues, but nothing pertaining to the health and well-being of Abigail."[4] The Department rescinded the 14-day notice because it had not yet approved the home of Anahi's aunt and uncle as a potential placement for Abigail. On November 18, 2020 the Department requested another 120 days to approve Abigail's placement with Anahi's relatives.

    D.     *The Juvenile Court Denies Heather's Request for De Facto Parent Status and Places Abigail with Anahi's Relatives in Arizona*

Heather attended the November 24, 2020 hearing remotely and was represented by pro bono counsel. The Department opposed Heather's request for de facto parent status, recommended the court place Abigail with her sister in Arizona, and asked the court to continue the section 366.26 hearing until

---

[4]     Heather filed a declaration in support of counsel for Abigail's request, claiming the Department's notice may have been motivated by Heather's involvement in a civil lawsuit she had filed against the Department in August 2014 regarding the procedural rights of foster parents. Although Heather and the other plaintiffs in that case settled the lawsuit in 2017, there were still compliance proceedings in court. Heather received the Department's 14-day notice of its intent to remove Abigail a few hours after counsel for Heather in the civil action appeared in court to request a compliance hearing.

7

the Department could assess Abigail's placement in Arizona. Counsel for the Department argued that Heather's request for de facto parent status would be moot after the court placed Abigail in a different home and that the court should deny the request because of "the incident that occurred with [Anahi] in the home." Counsel for Abigail agreed with the Department and said she did not believe Heather was "sincere with regards to pursuing sibling visitation." Counsel for Abigail described several incidents where Heather reportedly "thwarted" Abigail's visits with Anahi.

Counsel for Heather denied the allegations against Heather and observed that Heather, as a nonparty, did not have access to the Department's report providing the details of those allegations and that the Department had not discussed any of the allegations with Heather. Counsel for Heather asked the court to allow Heather to make a statement refuting the allegations. On the merits of the request, counsel argued that Heather met all of the criteria for de facto parent status, that Abigail was "profoundly bonded" with Heather, that Abigail regarded Heather as her mother, and that removing Abigail from Heather would interfere with the psychological bond between them. Counsel for Heather explained Abigail's visits with Anahi were short because Abigail was only two years old and cell phone calls with a child that age "are difficult." Counsel said Heather would enter into a post-adoption contact agreement to ensure visits with Anahi continued.

The juvenile court did not rule on the request to allow Heather to make a statement. The court, stating that the "primary goal" is "placing children together," placed Abigail on an extended visit with Anahi in Arizona. The court explained Abigail's placement in Arizona was "not for anything [Heather]

8

has done" and said Anahi's removal from Heather's home was a "secondary issue." The court denied Heather's request for de facto parent status, stating: "I think I did indicate that the primary goal in this is to [place] this child with her sibling. It puts your motion for de facto [parent status] moot." The court continued the section 366.26 hearing to February 2021. Heather timely appealed.

Following Heather's appeal, the juvenile court identified adoption as the permanent plan for Abigail and continued the section 366.26 hearing to March 2022 and the permanency planning review hearing to May 2022.[5] Abigail has been placed with Anahi's relatives in Arizona since November 24, 2020.

## DISCUSSION

Heather contends the juvenile court erred in denying her request for de facto parent status, arguing that the request was not moot and that she did not receive proper notice of the November 24, 2020 hearing. We agree with Heather's first argument and need not address the second.[6]

---

[5] We take judicial notice under Evidence Code sections 452 and 459 of the juvenile court's November 16, 2021 and December 8, 2021 orders.

[6] Heather also argues the juvenile court misunderstood the law when the court stated that the "primary goal" was to place Abigail with Anahi. This appeal, however, does not involve the merits of the court's decision to place Abigail with Anahi in Arizona. Even as a de facto parent, Heather would not have standing to argue the trial court erred in selecting Abigail's

9

A.     *Applicable Law and Standard of Review*

"'The concept of de facto parent has been judicially created to recognize limited rights in dependency cases for a person who has been found by the juvenile court to have assumed, on a day-to-day basis, the role of a parent, fulfilling [a] child's physical and psychological needs.'" (*In re Justin O.* (2020) 45 Cal.App.5th 1006, 1015; see *In re R.J.* (2008) 164 Cal.App.4th 219, 223; Cal. Rules of Court, rule 5.502(10).)  In discussing when the juvenile court should allow foster parents to participate as parties in the proceedings, the Supreme Court in *In re B.G.* (1974) 11 Cal.3d 679 stated that "a person who assumes the role of parent, raising the child in his [or her] own home, may in time acquire an interest in the 'companionship, care, custody and management' of that child." (*Id.* at p. 692, fn. omitted.)  Such de facto parents "should be permitted to appear as parties in juvenile court proceedings . . . to assert and protect their own interest in the companionship, care, custody and management of the child." (*Id.* at p. 693; accord, *In re B.S.* (2021) 65 Cal.App.5th 888, 893-894.)  Consistent with the Supreme Court's holding in *B.G.*, rule 5.534(a) of the California Rules of Court provides:

---

placement.  (See *In re B.S.* (2021) 65 Cal.App.5th 888, 897 [a de facto parent's legal rights are not injuriously affected by an erroneous placement decision]; *In re P.L.* (2005) 134 Cal.App.4th 1357, 1361 [a de facto parent does not have standing to appeal a placement decision]; but see *In re Vincent M.* (2008) 161 Cal.App.4th 943, 953 [de facto parents had standing to appeal an order granting a section 388 petition by the presumed father for reunification services, where the juvenile court allowed the de facto parents to file an opposition to the petition and told them they could appeal an adverse decision].)

10

"On a sufficient showing, the court may recognize the child's present or previous custodian as a de facto parent and grant him or her standing to participate as a party in the dispositional hearing and any hearing thereafter at which the status of the dependent child is at issue. The de facto parent may: [¶] (1) Be present at the hearing; [¶] (2) Be represented by retained counsel or, at the discretion of the court, by appointed counsel; and [¶] (3) Present evidence." (See *In re B.S.*, at p. 894.)

"'The decision to grant de facto parent status depends on an assessment of the particular individual and the facts of the case.'" (*In re Justin O.*, *supra*, 45 Cal.App.5th at p. 1015; see *In re Bryan D.* (2011) 199 Cal.App.4th 127, 141.) "The factors courts generally consider for determining de facto parent status include "'whether (1) the child is 'psychologically bonded' to the adult; (2) the adult has assumed the role of a parent on a day-to-day basis for a substantial period of time; (3) the adult possesses information about the child unique from other participants in the process; (4) the adult has regularly attended juvenile court hearings; and (5) a future proceeding may result in an order permanently foreclosing any future contact [between the adult and the child].'""" (*In re Justin O.*, at p. 1015; see *In re Bryan D.*, at p. 141.) "'De facto parent status is ordinarily liberally granted on the theory that a court only benefits from having all relevant information on the best interests of the child.'" (*In re Justin O.*, at p. 1015; see *In re Bryan D.*, at p. 141.)

A de facto parent has "no right to reunification services, visitation, custody, [or] continued placement of the child . . . ." (*In re A.F.* (2014) 227 Cal.App.4th 692, 700; see *In re Bryan D.*, *supra*, 199 Cal.App.4th at p. 146.) "De facto parent status merely allows a person who has assumed the role of parent of a child to

11

participate in the court hearings and share their 'legitimate interests and perspectives' with the juvenile court as it makes decisions about the child's future care and welfare. [Citation.] Granting de facto parent status does not mean the child will be placed with the de facto parents. The status merely provides a way for the de facto parent to stay involved in the dependency process and provide information to the court." (*In re Bryan D.*, at p. 146; accord, *In re A.F.*, at p. 700; see *In re Brianna S.* (2021) 60 Cal.App.5th 303, 314 ["Designating a person as a de facto parent gives that person '*procedural* rights' in the ongoing dependency proceedings, such as the right to be present at hearings, to be heard and to retain counsel, but de facto parent status does not grant the person any *substantive* rights to 'reunification services, . . . custody, [or] continued placement of the child.'"].)

A person requesting de facto parent status has the burden to show by a preponderance of the evidence he or she qualifies for that status. (*In re Justin O.*, *supra*, 45 Cal.App.5th at p. 1015.) We review a juvenile court's decision denying a request for de facto parent status for an abuse of discretion. (*Ibid.*; *In re Bryan D.*, *supra*, 199 Cal.App.4th at p. 141.)

B.      *The Juvenile Court Abused Its Discretion in Denying Heather's Request for De Facto Parent Status*

No one disputed that Heather met the requirements for de facto parent status or argued that her conduct disqualified her from that designation.[7] And nothing contradicted Heather's

---

[7]     The allegations about Heather's difficulties with Anahi did not disqualify Heather from de facto parent status for Abigail. (See *In re Bryan D.*, *supra*, 199 Cal.App.4th at pp. 142-144, 146

statements that she had a strong bond with Abigail, that she had assumed the role of Abigail's parent for a substantial period of time, that she possessed unique information about Abigail, and that she attended Abigail's juvenile court hearings.  Thus, the juvenile court should have granted Heather's request for de facto parent status.  (See *In re Justin O.*, *supra*, 45 Cal.App.5th at p. 1016 [juvenile court abused its discretion in denying a grandmother's request for de facto parent status where the court "failed to consider the relevant criteria and identified no factual support for its conclusion that Grandmother did not qualify"]; *In re Bryan D.*, *supra*, 199 Cal.App.4th at pp. 142, 146 [juvenile court abused its discretion in denying a grandmother de facto parent status where all the factors supported granting her that status].)

The juvenile court's order placing Abigail with Anahi's aunt and uncle in Arizona did not make Heather's request for de facto parent status moot.  California Rules of Court, rule 5.534(a) allows a juvenile court to recognize a child's "present *or previous*

---

[a person who qualifies for de facto parent status does not become ineligible unless the person "directly or indirectly cause[d] the initiation of dependency proceedings" and "betrayed or abandoned the parental role," subjected the child "to serious abuse," inflicted "substantial harm" on the child, or acted "in a manner fundamentally inconsistent with the parental role"]; cf. *In re Kieshia E.* (1993) 6 Cal.4th 68, 78 ["any adult who causes the onset of dependency proceedings by committing sexual or other serious physical abuse upon a child in his charge has betrayed and abandoned, not embraced, 'the role of a parent,'" and by "acting in a manner so fundamentally inconsistent with the parental role, the perpetrator forfeits any opportunity to attain the legal status of de facto parent and its attendant privilege of participation and advocacy"].)

custodian" as a de facto parent. (Italics added; see *In re Patricia L.* (1992) 9 Cal.App.4th 61, 67 [if the factors for determining de facto parent status apply, "it is immaterial whether the adult was the 'child's current or immediately succeeding custodian'"].) In light of Abigail's lengthy placement with Heather and Heather's experience with Anahi, Heather likely would have had unique and relevant information to provide the court at the continued hearing in February 2021, and the record leaves no doubt Heather and Abigail still would have had a psychological bond. Indeed, the court ordered the Department to "set up video visits with [Heather] to smooth [Abigail's] transition to her new home." Thus, Heather's request for de facto parent status, even after the court placed Abigail with Anahi's relatives, was not moot.

The Department argues any error was harmless because Heather attended Abigail's juvenile court hearings, Heather submitted reports about Abigail, and her attorney argued on her behalf at the hearings. "Arguably," the Department asserts, Heather "exercised all of the rights afforded to a de facto parent, even without the title." But she didn't. The court did not allow Heather to provide evidence or testify at the November 24, 2020 hearing, which may have deprived the court of relevant information regarding the best placement for Abigail. (See *In re A.F.*, *supra*, 227 Cal.App.4th at p. 701 ["The key reason for affording de facto parents standing to appear and participate is so they may provide critical information that assists the court in determining what disposition is best for the child."]; see also *In re B.G.*, *supra*, 11 Cal.3d at p. 693 [de facto parents aid the court in making "'a judicious appraisal of all available evidence bearing on the child's best interests' including an evaluation of

14

the relative merits of alternative custody awards"]; *In re B.S.*, *supra*, 65 Cal.App.5th at p. 894 [same].) In addition, as a de facto parent, Heather would have been able to ask the court to appoint counsel for her; that she was represented by pro bono counsel for some of the proceedings did not preclude her from requesting court-appointed counsel in the future. And going forward, as a de facto parent she will be entitled to notice of, and to participate in, future proceedings involving Abigail, including the hearings currently scheduled for March 2022 and May 2022.

The Department also argues any error was harmless because, now that Abigail has been living with Anahi in Arizona for over a year, Heather can no longer provide the juvenile court with "current and unique information about Abigail." Perhaps, but the Department does not argue Heather's appeal is moot, and the juvenile court in future proceedings can determine how much weight, if any, to give to evidence offered by Heather. (See *In re A.F.*, *supra*, 227 Cal.App.4th at p. 700 [the "extent of a de facto parent's right to present evidence depends on the relevant circumstances"]; *In re Patricia L.*, *supra*, 9 Cal.App.4th at p. 67 ["If the information presented by the de facto parent is not helpful, the court need not give it much weight in the decisionmaking process."].) Once the juvenile court grants Heather de facto parent status, the Department will have an opportunity to show by a preponderance of the evidence that "'the dependency is terminated or a changed circumstance no longer supports the status.'" (*In re A.F.*, at p. 700; see *In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1513-1514 ["the responsible social services agency or department must file a noticed motion, and 'has the burden of establishing a change of circumstances which no longer support [de facto parent] status, such as when a

15

psychological bond no longer exists between the adult and the child,' or when the de facto parent no longer has reliable or unique information regarding the child that would be useful to the juvenile court"].)  Until the juvenile court grants such a motion or otherwise rescinds Heather's de facto parent status, she retains a limited interest in "the companionship, care, custody and management" of Abigail.  (*In re B.G.*, *supra*, 11 Cal.3d at p. 693.)  That interest was not extinguished when the juvenile court placed Abigail with Anahi's relatives in Arizona.

## DISPOSITION

The juvenile court's order denying Heather's request for de facto parent status is reversed, and the court is directed to enter a new order granting her request.


SEGAL, J.


We concur:



PERLUSS, P. J.



FEUER, J.


16

Filed 2/15/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ABIGAIL L., a Person Coming Under the Juvenile Court Law. | B310601 <br><br> (Los Angeles County Super. Ct. No. 19CCJP00630A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> HEATHER W., <br><br> Defendant and Appellant. | **ORDER CERTIFYING OPINION FOR PUBLICATION AND DENYING MODIFICATION [NO CHANGE IN APPELLATE JUDGMENT]** |

THE COURT:

The opinion in this case filed February 10, 2022 was not certified for publication. Because the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the appellant's request for publication under California Rules of Court, rule 8.1120(a), is granted.

1

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

The appellant's request for modification is denied.

This order does not change the appellate judgment.

---

PERLUSS, P. J.                SEGAL, J.                FEUER, J.

2