Filed 7/18/23  In re M.Y. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.Y., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>E.M.,<br><br>        Defendant and Appellant;<br><br>B.Y. et al.,<br><br>        Respondents. | E080365<br><br>(Super.Ct.No. DPRI2200038)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Dorothy McLaughlin, Judge.  Affirmed.

Sarah Vaona, under appointment by the Court of Appeal, for Defendant and Appellant, E.M.

1

Minh C. Tran, County Counsel and Catherine E. Rupp, Deputy County Counsel, for Plaintiff and Respondent.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Respondents, B.Y. and D.R.

E.M. (father) appeals the juvenile court's order designating maternal grandparents B.Y. and D.R. (grandparents) de facto parents. Father argues the court abused its discretion by granting the grandparents' request for de facto parent status because their actions gave rise to the dependency. We disagree and affirm.

BACKGROUND

This dependency concerns father's child M.Y. (born 2017).

In March 2022, mother died following a lengthy illness. Before her passing and during her illness, mother and M.Y. lived with grandparents for approximately two years. M.Y. continued living with grandparents after mother passed, and grandparents petitioned for guardianship. Maternal grandfather is open that he does not like father and believes father has not done anything for M.Y. Father contested the guardianship, and the court denied grandparents' petition.

The court ultimately ordered M.Y. be put into father's care in July 2022. Shortly thereafter the department received a referral alleging that the custody handoff between grandparents and father escalated into violence. Specifically, the referral alleged father showed up at grandparents' home with law enforcement, cursed at M.Y., and shoved maternal grandfather. It also alleged M.Y. yelled throughout that she did not want to go

2

with father, that he was mean, and that he hits her.  The supervised visit monitor present during the exchange indicated M.Y. was initially reluctant to go, but calmed down once in the car.  The monitor also confirmed father shoved maternal grandfather, but only after maternal grandfather "invaded the father's personal space."  Maternal grandmother provided video of the incident, and the reviewing social worker noted M.Y. "sounded very upset and near panic at several point[s]," but that they "did not hear the father curse nor threaten [M.Y.]," though "the audio was not consistently clear."

The department visited father's home on August 1, 2022, and found it clean and "well-furnished with more than adequate provisions."  The social worker described M.Y. as shy, but said she otherwise appeared "healthy with no signs of abuse or neglect." M.Y. also "sought comfort from father and wanted him to carry her around the house."

Two days later, the department filed a petition under section 300, subdivision (b), alleging father failed to supervise or protect M.Y. adequately because he "fails to ensure the child's emotional needs are met and continues to expose the child to a hostile relationship with the maternal grandparents."  This was the only allegation in the petition. On August 18, 2022, the department recommended finding the petition stated a prima facie case but that M.Y. remain in father's care.  The court followed these recommendations.

That same month grandparents filed a request to be designated de facto parents.

Between August and September 2022 grandparents participated in supervised visitation with M.Y.  At every visit, grandparents photographed and reported marks and

3

bruises they saw on M.Y.  M.Y. underwent a Child Abuse and Neglect Examination in September 2022.  The examination determined that the marks and bruises were "commonly seen in normal childhood play," that they were not patterned and were nonspecific, and that the causes were otherwise unknown.  After the examination, the department informed grandparents that continuing to point out and photograph any alleged injuries in front of M.Y. could be detrimental, that department staff would be advised not to take any more pictures of the alleged injuries, and that grandparents were to let the department know of any concerns after visits and away from M.Y.  Nevertheless, grandparents continued to surreptitiously take photos of marks they saw on M.Y.  When the department found out, it forbade grandparents from using their phones during visits.

In October 2022 the department filed a jurisdiction and disposition report, recommending that father receive family maintenance services.  The court held a jurisdiction and disposition hearing in November 2022.  The court found the sole allegation in the petition true and ordered family maintenance services.

The court held a hearing on grandparents' de facto parent request later that month. The department, father, and minor's counsel all recommended denying the request.  After hearing testimony from father and maternal grandfather the court took the request under submission.  The court eventually granted the request in December 2022.

ANALYSIS

Father argues the juvenile court erred by granting grandparents' de facto parent request because their actions gave rise to the dependency itself, which disqualifies them from becoming de facto parents. Grandparents argue that the cases father relies on misstated the relevant rule, and that their conduct did not disqualify them from seeking or obtaining de facto parent status. We agree with the grandparents.

"The concept of de facto parent has been judicially created to recognize limited rights in dependency cases for a person who has been found by the juvenile court to have assumed, on a day-to-day basis, the role of a parent, fulfilling the child's physical and psychological needs." (*In re Leticia S.* (2001) 92 Cal.App.4th 378, 381 (*Leticia S.*).) Our Supreme Court has acknowledged that a de facto parent "may, in time, acquire an 'interest' which is 'substantial' in the ' "companionship, care, custody, and management" ' of the child." (*In re Kieshia E.* (1993) 6 Cal.4th 68, 75 (*Kieshia E.*).) De facto parent status "merely provides a way for the de facto parent to stay involved in the dependency process and provide information to the court." (*In re Bryan D.* (2011) 199 Cal.App.4th 127, 146 (*Bryan D.*); see *In re Brianna S.* (2021) 60 Cal.App.5th 303, 314 ["Designating a person as a de facto parent gives that person '*procedural* rights' in the ongoing dependency proceedings, such as the right to be present at hearings, to be heard and to retain counsel, but de facto parent status does not grant the person any *substantive* rights to 'reunification services, . . . custody, [or] continued placement of the child.' "].)

"A person requesting de facto parent status has the burden to show by a preponderance of the evidence he or she qualifies for that status." (*In re Abigail L.* (2022) 75 Cal.App.5th 169, 178.) We review a juvenile court's decision on a request for de facto parent status for abuse of discretion. (*In re Michael R.* (1998) 67 Cal.App.4th 150, 156.)

While "[d]e facto parent status is ordinarily liberally granted on the theory that a court only benefits from having all relevant information on the best interests of the child," there are exceptions. (*Bryan D.*, *supra*, 199 Cal.App.4th at p. 141.) For instance, our Supreme Court has held that "any adult who causes the onset of dependency proceedings by committing sexual or other serious physical abuse upon a child in his charge has betrayed and abandoned, not embraced, 'the role of parent.' " (*Kieshia E.*, *supra*, 6 Cal.4th at p. 78.) "By acting in a manner so fundamentally inconsistent with the parental role, the perpetrator forfeits any opportunity to attain the legal status of de facto parent and its attendant privilege of participation and advocacy." (*Ibid.*) "Once there is an adjudication that a child is within the jurisdiction of the juvenile court because a nonparental caretaker committed a substantial harm, such as sexual or other serious physical abuse, which is fundamentally at odds with 'the role of parent,' the perpetrator's 'protectible interest' in dispositional decisions is extinguished." (*Ibid.*)

Later decisions, including the case father relies on most heavily, *Leticia S.*, have stated this rule more broadly. *Leticia S.* in particular held that "[i]n determining whether a person should be accorded de facto parent status, the court must consider whether that

person's behavior was the basis for a jurisdictional finding by the court," and that "[i]f the applicant's action caused the child to be declared a dependent," they have therefore forfeited their ability to become a de facto parent. (*Leticia S.*, *supra*, 92 Cal.App.4th at p. 382.) In other words, under *Leticia S.*'s reading of *Kieshia E.*, any person whose conduct gave rise to the dependency proceedings is disqualified from being made a de facto parent, not just those who committed "sexual or other serious physical abuse upon a child in [their] charge." (*Kieshia E.*, *supra*, 6 Cal.4th at p. 78.)

However, other courts have disagreed with the broader rule articulated by *Leticia S.* For instance, *Bryan D.* expressly "disagree[s] with the *Leticia S.* court to the extent it characterizes *Kieshia E.* as holding that an applicant for de facto parent status becomes automatically ineligible if the applicant's conduct is a cause for the dependency proceeding, *regardless of the nature of the conduct in question*." (*Bryan D.*, *supra*, 199 Cal.App.4th at p. 144.) Indeed, *Bryan D.* argues that despite the broad statement of the rule in *Leticia S.* and elsewhere, few courts have applied the rule quite so broadly. As *Bryan D.* points out, "[s]ubsequent cases have extended *Kieshia E.*'s analysis to conduct other than sexual or physical abuse," but "these cases still concern serious and substantial harms to the children involved." (*Bryan D.*, at p. 143.) This includes *Leticia S.*, in which "the would-be de facto parent hit the child and left narcotics within her reach." (*Bryan D.*, at p. 143.) That is according to *Bryan D.* despite *Leticia S.*'s broad reading of *Kieshia E.*, its decision was still largely in accord with a more narrow reading of *Kieshia E.*

Given this, the court in *Bryan D.* ultimately held it was an abuse of discretion to deny a request for de facto parent status when "Grandmother demonstrated poor judgment that placed [the minor] at risk of harm, but her failures were not fundamentally at odds with the role of parent in the manner of the mother's boyfriend who sexually abuses the child, the grandmother who gives a known abuser access to her grandchildren, the grandmother who fails to enroll her grandson in school or take him to the doctor, or the grandmother who leaves her grandchildren with their drug-addicted mother who repeatedly demonstrates herself unable to care for them properly." (*Bryan D.*, *supra*, 199 Cal.App.4th. at p. 146.)

We conclude that *Bryan D.*'s interpretation and application of *Kieshia E.* is the appropriate one. We agree that the question under *Kieshia E.* is not merely whether the applicant for de facto parent gave rise to the dependency, but whether they "substantially harm[ed] a child," or otherwise "act[ed] in a manner fundamentally inconsistent with the role of a parent." (*In re Merrick V.* (2004) 122 Cal.App.4th 235, 257 (*Merrick V.*).)

Accordingly, we also conclude the juvenile court did not abuse its discretion in granting grandparents' request for de facto parent status. It is not enough that the basis for jurisdiction was, at least in part, that father "expose[d] the child to a hostile relationship with the maternal grandparents." Even accepting that grandparents acted poorly, gave rise to this dependency, and may even be somewhat detrimental to M.Y., they did not forfeit their ability to seek de facto parent status. Ultimately, grandparents' actions do not appear to have caused substantial harm, nor are they "fundamentally

8

inconsistent with the role of a parent." (*Merrick V*., *supra*, 122 Cal.App.4th at p. 257.) Being too concerned about potential injuries and accusing father of various misdeeds is a far cry from physical or sexual abuse, or even the type of negligent conduct seen in *Leticia S.* Indeed, grandparents' behavior could best be characterized as over, rather than under, protective. Whether this overprotectiveness is a symptom of their genuine concern for M.Y., their antipathy for father, or some combination of both is not for us to say. In any case, the juvenile court was right to conclude that their conduct was not the type of harmful conduct contemplated by *Kieshia E.*, and therefore does not disqualify them from becoming de facto parents.

### DISPOSITION

We affirm the order granting grandparents' request for de facto parent status.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____
                                                                    J.

We concur:


CODRINGTON _____
            Acting P. J.


MENETREZ _____
                J.

9